ADDISON,
*January*,
1843.

Crane
*v.*
Stickles &
Trustees.

---

DAVID A. CRANE *v.* MIRIAM STICKLES, principal debtor, and LUTHER FERRE and JOSEPH K. FERRE, trustees.

The payee of a note, after having taken security of the principal, may give up such security, and call upon the undersigner of the note, provided he acts in good faith, and only with reference to his own interest.

The payee of a note is not obliged to regard the directions of the surety.

A creditor may maintain a trustee process against the vendee of property, fraudulently purchased to keep it from being attached, and is not obliged to try the validity of the sale by attaching the property.

Where one disposes of all his property to secure a future support through life, making no provision for the payment of his debts, the sale, as to his creditors, is fraudulent and void.

ASSUMPSIT against the principal debtor, on a joint and several note for $65, dated January 5, 1840, and payable January 1, 1841, signed by the said principal debtor, and one Marcus C. Woodworth.

The action was commenced at the June term, 1841, of Addison county court, when the trustees appeared and severally disclosed that they had not any goods chattels, rights or credits, of the said Miriam Stickles, in their hands or possession; that the said Miriam was sister to the said Luther Ferre, and aunt of said Joseph K. Ferre; that she was an aged woman, in feeble health and unable to labor for her support; that about the middle of July, 1840, she came to live with the said Luther and Joseph K., and from that time had been supported by them; that having a life estate, in about sixty acres of land, she conveyed the same to them on the 24th of December, 1840, together with twenty-four sheep, three cows, two two year olds, three calves, and two stacks of hay,

ADDISON,
January,
1843.

Crane
v.
Stickles &
Trustees.

in consideration of their supporting her, during her natural life—to which they bound themselves by writing, on the same day; that the said land was not in good condition, and the use of it was worth about $50 a year; and that there was but about half enough of the hay to winter through the said cattle and sheep.

There was no evidence except the disclosures of the trustees.

The court decided that the trustees had effects, and were liable as trustees, to the amount of the note and interest, to which decision they excepted.

In the action against the principal debtor, she plead the general issue, which was joined to the court. On the trial she gave evidence tending to show that the note in question was given for a waggon, purchased by said Woodworth of the plaintiff, and was signed by her as surety for Woodworth, which relation of surety was well known to the plaintiff; that about the time the note became due, Woodworth executed to the plaintiff a bill of sale of twelve acres of wheat and rye, as security for the payment of the note; that when said grain had ripened and was fit for harvesting, the plaintiff claimed to have a lien thereon, by virtue of said bill of sale; that Woodworth employed a man to cut the grain for him, and to keep it in his custody, until some arrangement should be made about it, who thereupon, cut, and took possession of it, and was directed by Woodworth not to deliver it to the plaintiff; that Woodworth had personal property, other than the grain, after the note became due, and up to the time of the bringing of this suit, which the plaintiff might have attached, and by which he might have secured the note, of which he was informed by judge Solace, who told him he would collect the note for him if he wished.

Upon this evidence the court gave judgment for the plaintiff, to which the defendant excepted.

*H. Seymour*, for principal debtor and trustees.

I. As to the action against the trustees. The statute in relation to trustees, does not authorize the court to compel the person charged as trustee, to do that which he had never agreed to do, or that which the principal debtor could not require him to do. The property conveyed by Mrs. Stick-

ADDISON,
January,
1843.

Crane
v
Stickles &
Trustees.

les to the Ferres, was paid for by them in such a way as was agreeable to their feelings, and within their ability, and was doing that for her which her age and infirmities required. The contract was such as the parties had a right to make, and one that was adapted to the convenience of both. If the plaintiff chose to treat this conveyance, for any cause, as void, he should have attached the property as Mrs. Stickles', and taken the responsibility of the result of a trial as to the validity of the transfer.

The plaintiff had no right to claim that the court should decide this conveyance to be fraudulent, without the finding of a jury, and without any testimony as to the facts of the case. If the court could properly decide that the conveyance was void, could the court arbitrarily determine what sum of money the Ferres should pay? There was no testimony shewing the value of the cattle—what was paid out for wintering them—what was the expense of supporting Mrs. Stickles the first year—whether there was any profit from the land the first year, or could be any, until Woodworth had taken off his crops, in the summer of 1841; and without such testimony, the court could have had no rule to govern them in deciding that the Ferres had effects and were liable as trustees, to the amount of plaintiff's note and the costs of the suit.

The case is not one that comes within the trustee act, and judgment should have been, that the Ferres were not chargeable as trustees, and that they be discharged with costs. *Baxter & Edmunds* v. *Currier*, 13 Vt. R. 615; *Burke* v. *Whitcomb*, 13 Vt. R. 421; *Hutchins* v. *Hawley*, 9 Vt. R. 295.

II. As to the action on the note. It appears that Woodworth was the principal, and the defendant surety. The wheat and rye were so far payment of the note, that plaintiff had no right to relinquish them to Woodworth to the injury of the surety. The surety has a right to require of the plaintiff the application of their proceeds as payment. To say that the plaintiff may relinquish property put in his control for the purpose of securing the payment of the debt, without thereby releasing the surety, is to say that the creditor may collude with the debtor, for the purpose of throwing the loss on the surety. The principles that courts have adopted to

ADDISON,
January,
1843.

Crane
v.
Stickles &
Trustees.

protect the right of sureties are extensive enough to embrace this case. 2 Eq. Dig. 456, 459 ; 13 Johns. 174 ; 3 Paig. R. 117 ; 16 Johns. 152 ; Fell on Guarantees 214, 215 ; *Strong & Delano* v. *Wooster*, 6 Vt. R. 537 ; *McCollum* v. *Hinckley*, 9 Vt. R. 146.

*C. Linsley*, for plaintiff.

I. The bill of sale by Woodworth conveyed no right that could be legally enforced, as no possession by plaintiff was, or could be, taken ; and before plaintiff obtained any possession, Woodworth cut the grain and took it away. The plaintiff, by taking any real or supposed collateral security, did not release the defendant or Woodworth. The taking collateral security does not prevent the creditor from proceeding to collect his debt, without resorting to the security. But here there was no security obtained in fact, and the plaintiff was under no obligation to enter into a contract for the grain. If the defence on this point is well founded, the plaintiff's right of action was suspended from January till August, and that, too, by mere force of collateral security, and without any pretence of a contract to that effect.

II. The only remaining point to consider, is, whether the plaintiff is to be defeated in this action because he did not think proper to attach such property as judge Solace suggested he might attach. This was a joint and several note, and the liability of the signers was equal, as it regards the creditor, and the case shows that it was on the faith of Miriam Stickles' promise that plaintiff parted with his property. When the note came to maturity, she was legally and morally bound to pay the money, if Woodworth did not. She had nothing to do but to pay the note, and then she could have proceeded against any property she conceived Woodworth possessed, and could have controlled that proceeding at her pleasure. Even a court of chancery will not compel a creditor to proceed against a principal, for the benefit of the surety, unless the surety first indemnify and save harmless the creditor ; and it may well be doubted whether a court of chancery can legally or properly compel a creditor to forego the prosecution of the surety and resort to the principal. *Hays* v. *Wood*, 4 Johns. Ch. R. 131 ; *King* v. *Baldwin*, 2 Johns. Ch. R. 559 ; 8 Serg. & Rawl. 114.

ADDISON,
*January,*
1843.

Crane
*v.*
Stickles &
Trustees.

No question was made below, but that the trustees had ample property. It was only insisted that by force of the contract to support Mrs. Stickles, it was put beyond the reach of creditors. The question of the amount of property was a fact found by county court, and not examinable here.

The opinion of the court was delivered by

HEBARD, J.—This was an action upon a promissory note, against the defendant, and one Woodworth, for whom the defendant signed as surety. The defendant contends that the plaintiff, is not entitled to judgment against her, she being surety, for two reasons.

1. Because the said Woodworth had put certain securities into plaintiff's hands, of which he has not availed himself.

2. Because, after the note became due, the plaintiff was shown personal property belonging to Woodworth, that he might have attached.

In relation to the first, it is enough, perhaps, to say, that it does not appear that any security was put into his hands, of which, even with diligence, he could have availed himself. It appears that Woodworth gave the plaintiff, a bill of sale of some standing grain, but Woodworth controlled it and refused to let plaintiff have it, and we are not prepared to say that the plaintiff must go into an uncertain law suit about the grain before he can have his action against the defendant. But the law is not very well settled, that a creditor may not relinquish security that is under his control, and then resort to the undersigner of the note. The case of *The Bank of Montpelier* v. *Dixon,* 4 Vt. R. 587, seems to recognize the doctrine, that security may be relinquished and the undersigner pursued to the fullest extent. The payee of the note may give up such security as he may have obtained, at his own suggestion, without any assistance from the surety, provided he acts in good faith, and only with reference to his own interest. But as we do not discover that the plaintiff, had any security that he could control, he had a right to his action against the surety.

In regard to the second objection, we think the payee of a note is never bound to regard the directions of the surety.

ADDISON,
January,
1843.

Crane
v.
Stickles &
Trustees.

If the surety wishes to have the property of the principal attached, he may, at any time, pay up the note and attach for his own benefit.

The other branch of the case presents the question, whether the trustees are to be holden upon their disclosures, for the property which they bought of the defendant.

It seems, that one week before the plaintiff's note fell due, they took a sweeping sale of all the property of which the defendant was possessed, real and personal, and obligated themselves, that they would support her for the same, as the only consideration, paying nothing and agreeing to pay nothing, only by way of support—and leaving nothing for the payment of debts. Now if the law would tolerate a proceeding like this, any person, having the means, may make ample provision for himself and family during life, at the expense of his creditors. But that would not be permitted. We think this transaction strongly marked with fraud, and that this whole property, notwithstanding the sale, was liable to attachment as the property of the defendant. The authorities referred to, to show that this, being a fraudulent sale, could not be the subject of a trustee process, have reference to the statutes as they were before the revision.

Perhaps, the judgment of the county court would have been more technically correct, if it had adjudged them trustees for the specific articles of personal property which they received of the defendant, instead of adjudging them trustees generally ; but as there appears to have been enough personal property to cover the plaintiff's damage and cost, and as it is probable, that, at this time, much of the property may have been changed, or gone out of existence, we presume that the trustees would prefer to have the judgment affirmed here, rather than to have have it reversed and sent back merely for informality.

The judgment of the county court is affirmed.