GEORGE MATTINGLY

v.

AMELIA H. WULKE.

</div>

1. CONVEYANCE IN FRAUD OF CREDITORS.—The word "indebtedness," when speaking of conveyances in fraud of creditors, is not construed to mean a fixed sum due, but any liability that may have been incurred, either by contract express or implied, that renders a party a debtor within the meaning of the law.

2. CONVEYANCE TO AVOID FUTURE DEBTS.—The doctrine which avoids a voluntary conveyance, extends to and includes those cases where a party strips himself of all his property, in contemplation of incurring a future liability.

3. QUESTION OF FRAUD — GIVING A BILL OF SALE.—The giving of a written bill of sale on the transfer of personal property, may or may not be an indication of fraud, depending entirely upon the circumstances of the case, and the decision of this question should be left entirely with the jury. Hence an instruction to the jury that "the giving of a bill of sale is not an indication of fraud, but on the contrary is commendable in all cases where the items of property are numerous and valuable," is erroneous, because it usurps the province of the jury by determining a question of fact.

APPEAL from the Circuit Court of Carroll county; the Hon. WILLIAM BROWN, Judge, presiding.

Messrs. Armour & Shaw, for appellant; argued that voluntary settlements or gifts from father to child are void as against existing creditors, and cited 2 Kent's Com. 441; Schouler's Dom. Rel. 287; Van Wyck v. Seward, 6 Paige, 62; Gill v. Woods, 81 Ill. 64; Slattery v. Stewart, 45 Ill. 293; Moritz v. Hoffman, 35 Ill. 553; Virgin v. Gaither, 42 Ill. 39.

In a gift of personal property, if possession is allowed to remain with the giver until an execution against him is levied upon the property, it becomes liable to pay his debts: Ketchum v. Watson, 24 Ill. 591; The People v. Johnson, 14 Ill. 342; Cranz v. Kroger, 22 Ill. 74.

Fraud vitiates such transactions as to creditors and third persons: Harmon v. Harmon, 63 Ill. 512; Ward v. Enders, 29 Ill. 519.

In replevin, the plea of property in a third person, which goes to destroy the interest of the plaintiff, defeats the action if it establish a better right in the defendant: Van Namee v. Bradley et al., 69 Ill. 299; Anderson v. Talcott, 1 Gilm. 365; 10 Chicago Legal News, Feb. 9, 1878.

Where the verdict is against the law, or weight of evidence, a new trial will be granted: Higgins v. Lee, 16 Ill. 495; Schwab v. Gingerick, 13 Ill. 697; Clement v. Bushway et al. 25 Ill. 200; Ray v. Bullock, 46 Ill. 64; Ill. Cent. R. R. Co. v. Chambers, 71 Ill. 519.

Mr. C. B. Smith, for appellee.

Sibley, P. J.　This was an action of replevin originally commenced before a justice of the peace in Carroll county by the appellee against the appellant for a span of horses which the latter had taken upon an execution in favor of the "Victor Scales Company," and against Frederick Wulke.

The cause was taken to the Circuit Court of that county, where, upon a trial, the issues were found for the plaintiff, and the defendant appealed to this Court, and now insists that the finding of the jury was against the law and the evidence.

Frederick Wulke, being the owner of a large amount of land and personal property, in December, 1875, transferred it all to

his daughter, the appellee, except what he had previously conveyed to a son.   The bill of sale made out for the personal property expresses a consideration of five thousand dollars paid, and the deed for the land conveyed of fifteen thousand dollars, although no consideration was in fact paid, or expected to be paid.

The only question in the case is, whether the transfer was made by the father to the daughter to hinder or delay the creditors of the former in the collection of their debts, and therefore fraudulent in law.   On the trial the appellee testified that she was living with her father at the time of this transfer, and continued to live with him on the place the same as before the sale was made to her.   She also says that the property was all hers, and that she carried on and controlled the farm after the transfer, through the assistance of her brothers and the rest of the family working for her, without any agreement as to the price they, or any of them, were to be paid for their services. She says that her father at this time was in poor health, and wanted his family to have his property.   But she never had much talk with him about the transfer of it to herself.   That he was not in debt when he made this conveyance, although the scales, for which a note was afterward given by him and a judgment recovered upon that note whereon the execution issued that was levied on the horses in dispute, were upon the place before the papers of transfer were made out to her.

The reason she assigns for her father giving his note to the agent of the Victor Scales Company for the pair of scales that had been left on the place by the company previous to the transfer of the property by the father to her, was because he did not know any better.

If there could be any possible doubt about the object of this transaction, it is made perfectly clear by the repeated admissions of Miss Wulke that the property was conveyed to her by her father to " keep the swindlers from getting it."

To believe that this large amount of property was transferred by the father to a young daughter, and when there was, as she says, a prospect of her getting married, turned over to the mother, without some object other than mere filial affection,

requires too great a draft upon human credulity. Who these "swindlers" were that this father and daughter were trying to protect themselves against is not made known by the evidence.

The agent of the Victor Scales Company may have been one of them, as the company seems to have been the only party that had any claim against Frederick Wulke at the time of this transfer. If such was indeed the case, the method adopted to avoid the danger was one which the law cannot sanction. Notwithstanding the appellee states that her father was not indebted to any one at the time he transferred all his property to her, it still appears from her testimony that the Victor Scales Company had sold to, or left with her father upon trial, a pair of scales previous to this conveyance of his property, although he did not give his note for the scales until some time afterward.

She doubtless considered that no debt accrued till the note was given, and the same idea appears to have been acted upon during the trial, and conveyed to the jury in the first instruction for the plaintiff.

The word indebtedness used in the statute is not to be construed to mean a fixed sum due, but any liability that may have been incurred, either by contract express or implied, or in tort, renders a party a debtor within the meaning of the law. Bump on Fraudulent Conveyances, 485; Bay et al. v. Cook, 31 Ill. 336; Seward v. Jackson, 8 Cow. 406; Vanwoych v. Steward, 18 Wend.; Swartz v. Brown, 27 Penn.; McLaughlin v. Bank of Potomac, 7 Howe, 220; Manhattan Co. v. Osgood, 15 John, 162; Crane v. Stickler, 15 Vt. 252.

The jury should have been instructed as to what constituted an indebtedness, and not left to draw the conclusion assumed by appellee, that Wulke was not indebted to the Victor Scales Company until after he had promised to pay or given his note in settlement of the claim. A liability on his part was incurred the moment he received the scales of the company, whether purchased, or, as Miss Wulke says, taken on trial.

He then became responsible to the owner as bailee of the property, if nothing more, and being thus liable, it became as much a debt within the meaning of the statute as if there had

Mattingly v. Wulke.

been a positive sale and a promissory note given for the price agreed upon.

The doctrine which avoids a voluntary conveyance is carried still farther, and includes those cases where a party strips himself of all his property in contemplation of incurring a future liability.

The third instruction given for the plaintiff is still more objectionable, as it usurps the province of the jury by determining a question of fact.

3. "The court instructs the jury that the giving of a written bill of sale on the transfer of personal property is not an indication of fraud; on the contrary, it is commendable in all cases where the items of property are numerous and valuable." Will any one doubt that the giving of a written bill of sale on the transfer of personal property may or may not be an indication of fraud? It most unquestionably would depend entirely upon the circumstances of the case.

How often it happens that when a fraud is contemplated the parties to it seek to fortify their acts behind the strongest kind of written instruments, witnessed in the most careful and complete manner. Anything that is out of the usual way of transacting business is looked upon with suspicion. Then, should the jury be told that it is the usual course for a father, when he desires to make a present to his daughter for an honest purpose, to proceed to an attorney, have the bill of sale carefully prepared, expressing a consideration of five thousand dollars, when nothing is really or expected to be paid, signed, sealed and filed for record.

But the court was not quite satisfied with saying to the jury that all this would be no indication of fraud, and added that the practice was in certain cases a commendable one. From this instruction the jury might have been led to believe that the court intended to say that the sale in question being a written one, therefore no indication of fraud attached to it; but on the contrary the transaction of the parties should be treated as commendable.

Whether it was so in reality or not, was a question for the jury to consider; and we think it was error to even intimate

to the jury that a sale of property having the appearance of the one in this case was entitled to any commendation.

The judgment will be reversed and the cause remanded for another trial.

Judgment reversed.