# Richmond.

## G. W. CUNNINGHAM, ET ALS, V. W. H. RICHESON.

### March 20, 1924.

1. RECORDING ACTS—*Unrecorded Deed—Rights of Purchaser without Notice—Case at Bar.*—Complainant acquired his title by deed from L. and wife, which was recorded August 13, 1914. At that time a deed of April 7, 1910, was the only deed of record which conveyed any rights in the land or timber to defendants, and by its terms their rights were limited to expire on May 1, 1916. Thus, all timber and bark remaining on the land at the end of the first day of May, 1916, passed to the complainant. The complainant had a right to rely on his record title, unless he had notice of an unrecorded deed of November 24, 1912, extending the rights acquired by defendants to May 1, 1920. Both complainant and defendants claimed under a common grantor.

2. RECORDING ACTS—*Purpose of Acts—Purchaser without Notice.*—Recordation statutes have for their purpose the better security and repose of titles, and they may postpone one who voluntarily neglects to avail himself of registry acts, which enable him to give notice to all the world of his claim, to the claim of a subsequent purchaser who has acted on the faith of a public record.

3. RECORDING ACTS—*Notice of Unrecorded Deed—Burden of Proof—Case at Bar.*—In the instant case the record title of complainant being clear, the burden of proof was on the defendants to show that complainant had notice of an unrecorded deed from his grantor conveying certain rights in the land in question to defendants, and this burden they failed to sustain.

4. RECORDING ACTS—*Notice of Unrecorded Deed—Sufficiency of Notice—Case at Bar.*—In the instant case in which defendants asserted that complainant, purchaser of certain land, had notice of an unrecorded deed giving defendants certain timber and bark rights in the land in question, one of the defendants testified that complainant "asked me when my time expired and I told him in the spring—the first of May, 1920." This notice was not sufficient in itself to defeat complainant's title, though it was sufficient to put him on inquiry, and complainant told the witness that he would have the title examined, and did have it examined.

   *Held:* That defendants being informed that complainant was relying

on the record to show title, it became their duty to record their unrecorded deed or to inform him of its existence.

5.   FRAUD AND DECEIT—*Waiver of Fraud—Pooling Arrangement—Case at Bar.*—In the instant case, a suit to enjoin defendants from exercising certain rights and privileges on a certain tract of land, charges of fraud or bad faith in the purchase of the land made by the defendants against the complainant were not supported by the evidence, and if complainant were guilty of either in securing title to the land, the defendants, by entering into a pooling contract with the complainant, waived their right to seek relief against him for such alleged misconduct on his part.

Appeal from a decree of the Circuit Court of Amherst county.   Decree for complainant.   Defendants appeal.

*Affirmed.*

The opinion states the case.

*Wm. Kinckle Allen* and *John D. Easley,* for the appellants.

*Edward Meeks* and *Volney E. Howard,* for the appellee.

WEST, J., delivered the opinion of the court.

This is an appeal from a decree perpetually enjoining and restraining G. W. Cunningham, D. L. Cunningham, R. F. Powell, L. J. Kidd and G. L. Kidd from exercising any rights or privileges in or upon a certain tract of land in Amherst county.

H. H. Lewis, Jr., was the owner in fee simple of a tract of timbered land containing 986 acres, located in Amherst county, Virginia.

On April 7, 1910, H. H. Lewis, Jr., and Mary A. Lewis, his wife, sold and by deed conveyed to D. L. and G. W. Cunningham all the timber, bark and wood rights on this land, for the period of six years, to-wit: From

May 1, 1910, to May 1, 1916. The deed was duly recorded in the office of the clerk of the circuit court of Amherst county on April 26, 1910.

In 1912, D. L. and G. W. Cunningham conveyed certain of their bark rights on this land to R. F. Powell, thereby giving Powell bark rights to May 1, 1916. This deed was never recorded.

On November 24, 1912, Lewis and wife executed and delivered to G. W. Cunningham and his associates an extension—duplicate timber deed, extending their timber, bark and wood rights from May 1, 1916, to May 1, 1920. This deed was not recorded until March 22, 1918.

On July 21, 1914, Lewis and wife conveyed to W. H. Richeson the 986 acre tract of land subject to the timber, bark and wood rights, conveyed to D. L. and G. W. Cunningham by the deed of April 7, 1910. The deed of July 21, 1914, was recorded August 13, 1914, over three and one-half years before the recordation of the extension deed of November 24, 1912.

On February 18, 1919, G. W. Cunningham and R. F. Powell sold and conveyed to L. J. and G. L. Kidd the tanbark on the entire tract of land and the timber on 200 acres thereof, giving them until May 1, 1920, to cut the same. This deed was not recorded.

In May, 1918, G. W. Cunningham, and others under him, went upon the land and began to cut and remove timber, bark and other material therefrom, and continued to do so in 1919, against the protest of W. H. Richeson. Whereupon, W. H. Richeson instituted this suit to enjoin and restrain further trespass upon the property. The injunction was granted and upon hearing was perpetuated.

The record contains much irrelevant and immaterial matter. We shall, for that reason, make no reference to many questions discussed in the petition and briefs.

[1] In our view there are only two questions to be decided:

(a) Has W. H. Richeson a clear record title to the land and timber in controversy?

This question must be answered in the affirmative.

When the complainant acquired his title by deed from Lewis and wife, which was recorded August 13, 1914, the deed of April 7, 1910, from Lewis and wife to the Cunninghams was the only deed of record which conveyed any rights in the land or timber to the defendants, and by the terms thereof their rights were limited to expire on May 1, 1916.

According to the record all timber and bark remaining on the land at the end of the first day of May, 1916, passed to the complainant. The complainant had a right to rely on his record title unless he had notice of the unrecorded deed of November 24, 1912. Both complainant and defendants claim under H. H. Lewis, Jr., a common grantor, and the question of notice arises only as to the last mentioned deed.

[2] In *Payne* v. *Buena Vista Ex. Co.*, 124 Va. 318, 98 S. E. 42, the court said: "Recordation statutes have for their purpose the better security and repose of titles and they may postpone one who voluntarily neglects to avail himself of the registry acts, which enable him to give notice to all the world of his claim, to the claim of a subsequent purchaser who has acted on the faith of the public record."

[3] The record title of the plaintiff being clear, the remaining question is:

(b) Did the complainant, W. H. Richeson, have actual notice of the deed from Lewis and wife to the Cunninghams whereby the grantees were given an extension of their timber rights from May 1, 1916, to May 1, 1920?

The burden of proof is on the defendants to show that complainant had such notice. *Lamar* v. *Hale*, 79 Va. 155.

The Kidds and Powell acquired their supposed titles through the unrecorded contracts· with the Cunninghams. They can derive no benefit from this suit unless the Cunninghams win.

Dr. W. A. Richeson, father of W. H. Richeson, the complainant, testified as a witness in the case, but is not a party to the suit.

The record discloses these additional facts:

In 1914, Dr. W. A. Richeson was engaged in negotiating with a representative of the United States Government for the sale to the Government of a number of tracts of land owned by others in the same community, to be used by the Government as a part of its forest reservation. Lewis still owned the land and the Cunninghams the bark and timber rights on the 986 acre tract.

G. W. Cunningham and Powell conceived the idea of pooling their timber and bark rights with H. H. Lewis, Jr., then owner of the land, and selling it all to the Government; or, if Lewis would not pool with them to buy his fee simple title to the land, which would put them in a position to sell it all to the Government. At the request of Cunningham and Powell, Dr. Richeson, as their representative and at their expense, went to Grafton, West Virginia, to see Lewis. Lewis refused to pool his interest but offered to sell the land for $2,000.00. Cunningham and Powell were not anxious to purchase the land, provided the complete ownership thereof could be vested in one with whom they could deal and sell the whole to the United States Government.

It was agreed, before Dr. Richeson went to see Lewis,

that G. W. Cunningham was to have the first option to purchase if he saw fit to do so, and if he did not, Dr. Richeson or W. H. Richeson should have the right to purchase the land. Cunningham failed to put the money up and the land was purchased by and deeded to W. H. Richeson. On August 14, 1914, Richeson entered into a pooling contract with Cunningham Brothers and R. F. Powell, by which it was agreed that the property be sold as a whole to the United States Government at $8,000.00, and the proceeds of the sale divided among them in certain proportions set forth in the written contract.

It is contended by the defendants in error that W. A. Richeson acted as agent for W. H. Richeson in securing the deed from Lewis and wife conveying to him the 986 acre tract of land; that W. A. Richeson had notice of the deed extending the timber rights of Cunningham Brothers to May 1, 1920, and that W. H. Richeson is bound by such notice to his principal. This contention is not sustained by the evidence. G. W. Cunningham and R. F. Powell both testified that they sent W. A. Richeson to West Virginia at their expense to see Lewis about buying the land, and Cunningham says it was understood that he was to have the refusal of it at the agreed price, but Dr. Richeson would buy it if he did not.

[4] Dr. Richeson testified that he went to West Virginia to see Lewis for Cunningham and Powell and was not acting as agent for his son in the deal in any respect. W. H. Richeson testified that his father went to West Virginia for Cunningham and Powell and that he had no thought of buying the land at that time; that the land was bought for Cunningham and Powell; that after they failed to raise the money he furnished it and the deed was made to him; and that he had no notice of the

existence of the extension deed until May, 1918. The only witness to testify that the complainant, W. H. Richeson, had any notice of defendants' claim to timber rights after May 1, 1916, is the defendant, G. H. Cunningham, who says he told him they extended to May 1, 1920. This statement is contradicted by W. H. Richeson and by Dr. Richeson, who was present at the time Cunningham says he gave the information. Cunningham does not claim that he told the complainant, or that complainant knew from any source, of the *existence* of the second *unrecorded deed.* His language is, "W. H. Richeson asked me when my time expired and I told him in the spring—the first of May, 1920."

This notice, if given, was not sufficient in itself to defeat complainant's title. It was sufficient to put Richeson on inquiry, and the evidence shows that Richeson said to Cunningham and Powell; "I will come over to Amherst and get Mr. Meeks to examine the title, and buy the property;" and that he did have the title examined. Being thus informed that Richeson was relying on the record to show title, it became their duty to record their unrecorded deed or inform him of its existence. Under the circumstances, they and not W. H. Richeson must suffer for this oversight on their part. *Kelly* v. *Fairmont Land Co.,* 97 Va. 227, 33 S. E. 598.

The defendants having failed to show that Dr. Richeson was agent for his son, W. H. Richeson, while on his trip to see Lewis, nothing said to Dr. Richeson by Lewis can in any way affect the title of W. H. Richeson to the land. Besides, Lewis having executed the deed to W. H. Richeson, in which he conveyed the land subject to the timber rights which were granted by the deed of April 10, 1910, it seems doubtful that he is accurate in the statement that he told Dr. Richeson his timber rights did not expire until May 1, 1920.

[5] The charges of fraud or bad faith made by the defendants against the complainant are not supported by the evidence.    Besides, if he were guilty of either, in securing title to the land, the defendants, by entering into the pooling contract with the complainant, have waived their right to seek relief against him for such alleged misconduct on his part. 27 C. J., sec. 135, p. 23.

Mindful of the rule that great weight should be attached to the judgment of the trial court, especially where the evidence is conflicting, we are unable to say that the decree complained of contains reversible error.

*Affirmed.*