### In re STN ENTERPRISES, INC., d/b/a Atwater Arms, Debtor.

### UNSECURED CREDITORS COMMITTEE OF DEBTOR, STN Enterprises, Inc., on Behalf of STN ENTERPRISES, INC., Plaintiff,

### v.

### Janice NOYES, Walter O. Noyes,[1] Jr., John Wilkinson, and Edgar Pierce, Defendants.

### Bankruptcy No. 84–98.

United States Bankruptcy Court, D. Vermont.

May 7, 1987.

---

1. The complaint against W.O. Noyes was severed from this proceeding by Order of this

Court dated November 25, 1986.

J. Canney, Carroll, George & Pratt, Rutland, Vt., for debtor-in-possession (DIP).

R. Hull and W. Dagger, Jr., Dick, Hackel & Hull, Rutland, Vt., for defendant John Wilkinson (Wilkinson).

T. Maikoff, Rutland, Vt. and D.W. Goodrich, of Donovan & O'Connor, Adams, Mass., for defendant Janice Noyes (Noyes).

2. STN filed a petition on May 29, 1984 under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. On May 30, 1984, Honorable Charles J. Marro, then Bankruptcy Judge for the District of Vermont, appointed the Committee. On March 9, 1985, Judge Marro disqualified himself from any matters to which Janice Noyes was a party. On April 10, 1985, Chief Judge Albert W. Coffrin assigned the case to District Judge Franklin S. Billings. Judge Billings denied the Committee leave to sue either the probate estate of the sole stockholder of debtor or his wife/director, Janice Noyes, individually, for, *inter alia,* alleged waste, fraudulent or preferential transfers, and mismanagement. The Committee appealed to the Second Circuit.

J. Meyers, White River Junction, Vt., for plaintiff Unsecured Creditors Committee (Committee).

## MEMORANDUM OPINION AND ORDER DETERMINING JURISDICTION AND DENIAL OF MOTION TO DISMISS

FRANCIS G. CONRAD, Bankruptcy Judge.

### INTRODUCTION

This proceeding was remanded by the Second Circuit to the United States District Court, Franklin S. Billings, Jr., Judge, on December 26, 1985. Judge Billings then entered an "ORDER OF REFERRAL" on February 10, 1986, to this Court.[2]

On remand, the Second Circuit instructed, *inter alia,* this Court[3] to make a threshold inquiry as to whether the Unsecured Creditors Committee, (hereinafter referred to as Committee):

"[P]resents a colorable claim or claims for relief that on appropriate proof would support a recovery, ... In order to decide whether the debtor unjustifiably failed to bring suit so as to give the creditors' committee standing to bring an action ... the court must also examine ... whether an action asserting such claim(s) is likely to benefit the reorganization estate."

*Unsecured Creditors Committee of Debtor STN Enterprises, Inc. v. Noyes (In re STN Enterprises),* 779 F.2d 901, 905 (2d Cir.1985). (Citations omitted).

The Second Circuit affirmed the denial of leave to sue the probate estate, but reversed and remanded to the District Court on the Committee's request for leave to sue Defendant Noyes. The Second Circuit in *Unsecured Creditors Committee of Debtor STN Enterprises, Inc. v. Noyes (In re STN Enterprises),* 779 F.2d 901, 905 n. 5 (2d Cir.1985), suggested:

"This action was before the district court in the first instance because the then bankruptcy judge, Charles J. Marro, disqualified himself. There is now a newly appointed bankruptcy judge for the District of Vermont, Frank G. Conrad. Remand to him in the first instance by the district court would seem appropriate, assuming he is otherwise qualified to act."

3. *See,* footnote 2, *supra.*

On May 29, 1986, this Court held a preliminary evidentiary and oral arguments hearing on the issue of whether the Committee had presented a "colorable" claim or claims that, on appropriate proof, would support a recovery:

> "Of course, if the creditor's committee represents that its fee arrangement will in no event impose a net burden on the bankruptcy estate (because the committee will pay the fee and seek reimbursement only out of any recovery), then the preliminary inquiry can be limited to ascertaining whether the proposed lawsuit has a colorable basis on which to proceed."

*In re STN Enterprises, supra,* 779 F.2d 901, 906 (2d Cir.1985).[4]

We granted the Committee leave to institute this adversary proceeding "[A]gainst Janice Noyes and others," by our Order dated May 29, 1986, after argument and preliminary evidence, including:

> "We heard credible evidence of the accountant and it is clear that some money was diverted from the debtor corporation. To whom, or where, the funds went should be left to an evidentiary trial on the merits."

Unpublished *Order Granting Unsecured Creditor's Committee Leave to Institute Adversary Proceedings Against Janice Noyes & Others,* Case No. 84–98, Francis G. Conrad, B.J., Adv. Proc. No. 86–44, dated May 29, 1986, at page 2.

We also relied, *inter alia,* upon the representations of debtor's counsel to conclude that the debtor failed to pursue this adversary proceeding because:

> "Your Honor, at the request of the president (John Wilkinson-Defendant) of the corporation (debtor) back in April of 1985, we (J. Canney, Esq., attorney for DIP) reviewed this particular matter to sue Janice Noyes (wife/director of debtor and administratrix of Stephen Noyes' estate which is now DIP's sole stockholder)[5] in her capacity as a director. We made an investigation. We came to the conclusion that it would not be an appropriate action to bring. We have maintained that all along. We continue to maintain it."

May 29, 1986 Hearing Transcript, pages 71–72 (parentheticals supplied for clarity).

On October 9, 1986, the Committee filed, *inter alia,* a nine (9) count complaint against Defendant Noyes[6] and a two (2) count complaint against Defendant Wilkinson to recover preferential payments, preferential transfers, fraudulent conveyances, and for damages, pursuant to 28 U.S.C. §§ 1334, 151, and 157.

On October 28, 1986 and November 17, 1986, Janice Noyes and John Wilkinson, respectively, filed their answers and motions to dismiss the Committee's complaint under Rules of Bankruptcy Practice and Procedure Rule 7012(b).[7] Both Noyes and

---

**4.** Pursuant to the Second Circuit's remand, we held a pretrial conference on March 11, 1986, concerning the fee arrangement between the Committee's attorney and the Committee. *In re STN Enterprises, supra,* 779 F.2d at 905–06 (2d Cir.1985). On May 29, 1986, we Ordered, *inter alia,* that since the fee arrangement is contingent and the Committee represented they will only seek reimbursement for their costs of this adversary action out of any recovery, then the fee arrangement will not be burdensome to the estate.

**5.** After Mr. Noyes' death on May 5, 1984, counsel for the Committee sent a claim against the probate estate to the Vermont Probate Court for the District of Bennington, Vermont. On December 3, 1984, the administratrix (Janice Noyes) disallowed the claim. The Committee filed a motion for leave to commence, *inter alia,* a proceeding against the estate on December 10,

1984, in The United States Bankruptcy Court for the District of Vermont. The Second Circuit affirmed the District Court's denial of the Committee's request for leave to sue Stephen Noyes' estate for two reasons: 1) the probate estate was insolvent; and 2) the Committee failed to meet Vermont's four month statute of limitations (which requires that claims against decedent's estate be filed within four months after publication of notice to file claim), 14 V.S.A. § 1203(a)(1), and failed to petition the Probate Court after the administratrix denied their claim. *In re STN Enterprises, supra,* 799 F.2d at 903, n. 2 (2d Cir.1985).

**6.** Seperate counts were contained within the complaint against W.O. Noyes, father of Stephen Noyes. *See,* footnote 1, *supra.*

**7.** Rules of Bankruptcy Practice and Procedure Rule 7012(b) provides:

474

Wilkinson request us to dismiss the Committee's complaint on two grounds: (1) the bankruptcy court lacks subject matter jurisdiction over the complaint; and, (2) the committee's complaint fails to state a claim upon which relief can be granted.

Additionally, Defendant Noyes challenges the Committee's standing to prosecute the proceeding on behalf of the debtor. Alternatively, if this Court determines the complaint to be a "core" matter under 28 U.S.C. § 157(b)(2)(O), then Janice Noyes claims that 28 U.S.C. § 157 violates the United States Constitution because it deprives her from having an Article III judge preside over a suit allegedly governed strictly by state law.[8]

We deny the Defendants' motions because we hold that this Court has subject matter jurisdiction; the power to enter a final order; and the Committee has standing to prosecute this adversary proceeding under its "colorable" showing that the debtor unjustifiably failed to assert claims that may benefit the estate. Finally, we hold the Committee's averments are sufficient to withstand Defendants' motions to dismiss for failure to state a claim upon

which relief may be granted because it does not appear to a certainty that the Committee is entitled to no relief under any state of facts which could be proven at trial.

## BACKGROUND

STN, a dealer in antique firearms, was incorporated under Vermont law on August 6, 1982. Stephen T. Noyes, husband of Defendant Janice Noyes, was the sole stockholder, president, treasurer, and one of the two directors of STN Enterprises, Inc. (STN), the corporate debtor in possession, (DIP), until his presumed untimely demise in a plane crash on May 5, 1984. Defendant Noyes was and is the other director and secretary of the corporation.

As the Second Circuit noted in *In re STN Enterprises, supra,* the Committee's claims are based on the following facts:

"1. From October 8, 1982, to May 2, 1984, Stephen T. Noyes negotiated between $1.6 million and $2.1 million in checks on the STN account made out to "Cash," the use of

---

"(b) Applicability of Rule 12(b)–(h) F.R.Civ.P. Rule 12(b)–(h) F.R.Civ.P. applies in adversary proceedings."

On November 18, 1986, the Committee sought leave to file an amended complaint to assert a tenth count against Defendant Noyes and a third count against Wilkinson for failure to bring certain preference actions. Defendants filed their objections to the Committee's request for leave to amend. Based on a stipulation between Defendants and the Committee filed on February 11, 1987, on February 18, 1987, this Court granted a motion to dismiss the motion to amend that portion of the amended complaint asserting that Defendants Wilkinson and Noyes failed to bring preference actions on behalf of the Debtor. Thus, the present motion to dismiss concerns only the original nine (9) count complaint against Defendant Noyes and two (2) counts against Defendant Wilkinson brought by the Committee. *See,* footnote 1, *supra.*

Additionally, the parties agreed to bifurcate and defer our resolution of their dispute concerning a jury demand pending our decision on the motion to dismiss.

**8.** Since we hold in this Opinion that the Committee's causes of action against Defendant Noyes are core matters under 28 U.S.C.

§§ 157(b)(2)(C), (F) and (H), and a non-core-related matter with consent under 28 U.S.C. § 157(c)(2), we need not address Noyes' Constitutional claim that 28 U.S.C. § 157(b)(2)(O) is:

"[V]iolative of the United States Constitution because it deprives Mrs. Noyes from having an Article III judge preside over a suit governed strictly by state law and not by the bankruptcy statute."

Defendant Noyes' *Memorandum in Support of Motion to Dismiss,* filed March 25, 1986, at page 24.

In passing, we note that most of the Court of Appeals have upheld the post *Marathon* reference rule, upon which the Bankruptcy Amendment and Federal Judgeship Act of 1984 was modeled; Pub.L. No. 98–353, including our own Second Circuit in *Salomon v. Kaiser (In re Kaiser),* 722 F.2d 1574, 1581 (2d Cir.1983). *See, Associated Grocers of Nebraska Cooperative, Inc. v. American Home Products Corp. (In re Associated Grocers of Nebraska Cooperative, Inc.),* 62 B.R. 439, 447 at n. 8, 15 C.B.C.2d 973, 982 at n. 8 (D.Neb.1986) (citing at least six courts of appeals upholding the constitutionality of the reference rule). *Contra, Addison, III v. O'Leary (In re TWI, Incorporated),* 51 B.R. 470, 471 (Bankr. E.D.Va.1985) (holding "Unconstitutional in *Marathon,* unconstitutional now").

which funds remains unaccounted for;[9]

2. During the year prior to Stephen T. Noyes's death he took $250,000.00 in salary from the corporation and his wife, at least for tax purposes, was credited with $30,000 in salary;

3. For all or a greater portion of this time, the precise time being unknown, the corporation was insolvent;

4. During the same period of time the Noyes' home property, owned by them as a tenancy by the entirety, was increased in value, presumably from the funds mentioned in paragraphs 1 or 2 above, by way of installation of an electrical burglar alarm system and a swimming pool, and construction of a 'plush' showroom and an office;

5. Presumably also from the funds mentioned in paragraphs 1 and 2 above, Stephen Noyes bought life insurance in the amount of several hundred thousand dollars on his life, the beneficiary of which was his wife or a trust or trusts for her benefit;[10] and

6. Again presumably from the aforementioned funds, a $70,000 debt to Mrs. Noyes's father was repaid in the year preceding the bankruptcy filing."

*In re STN Enterprises, supra,* 779 F.2d at 902–03 (2d Cir.1985).

In addition to the above claims, the Committee has alleged that Defendant Noyes, as director, secretary and bookkeeper of the debtor, knew or should have known of the detrimental effect these disbursements had on the corporation; that certain corporate records were unaccounted for; and that assets were sold for grossly inadequate consideration following Stephen Noyes' death.[11]

9. The Committee's complaint, filed October 9, 1986, alleges in paragraph 14:
"14. That upon information and belief, during the period from September 1, 1982, through June 30, 1984, the debtor disbursed corporate funds totalling $7,590,689.00 in cash, which funds were and still remain unidentified and unaccounted for."

10. In addition to the life insurance, the Committee alleges in paragraphs 51 and 52 of its complaint:
"51. That the said Stephen T. Noyes with the funds taken from the Corporation as aforesaid, either by virtue of salary in an exorbitant amount or the fraudulent conveyances set forth herein, bought and paid for insurance policies on his life, and testamentary trusts in face amount in excess of $675,000.00, and bought and made investments in pension plan programs naming Defendant, Janice Noyes as beneficiary."
"52. The proceeds of said policies and testamentary trusts, were paid to the Defendant, Janice F. Noyes, and the pension plan purchased by Stephen T. Noyes provides for the payment of $2,926.67 per month to Defendant, Janice F. Noyes."
On October 22, 1985, Noyes filed an Adversary Proceeding No. 85–66 for declaratory relief against the administrator of the pension plan, Evergreen Associates, and DIP, STN Enterprises Inc., for the purpose of obtaining an order from this Court declaring her as the beneficiary and directing Evergreen to pay the benefits to her. The Committee filed its answer and, by way of affirmative defense of breach of fiduciary duty and unjust enrichment, argues that since this plan was purchased with corporate funds during its insolvency, then the plan's proceeds ought to be declared the property of the DIP. Proceeds from this pension fund are being held in escrow pending the outcome of the instant Adversary Proceeding, # 86–44.

11. The averments from the Committee's complaint:
"23. During the entire period aforementioned, Defendant Janice Noyes, as Director, Officer and Bookkeeper for the Corporation, had access to and control of corporate records and knew, or should have known, of the disbursements and their detrimental effect on the Corporation ...
30. Upon information and belief, following the death of Stephen Noyes, President and Director of the Corporation, and during the period of corporate insolvency, corporate records were missing and numerous corporate assets, including a Mercedes automobile, various statuary and sculptures, disappeared or were transferred for grossly inadequate consideration ...
55. On or about April 1, 1983, the Debtor purchased an Apple computer with corporate funds for a price of approximately $4,990.66 ...
56. Upon information and belief, said computer was fraudulently conveyed to Defendant, Janice Noyes, without consideration, or in exchange for grossly inadequate consideration, at a time when the debtor was insolvent."

After Stephen Noyes's death in May of 1984, Defendant Wilkinson became the president and director of debtor on or about May 21, 1984.[12] The Committee has asserted two counts against Defendant Wilkinson in his capacity as president and director of the debtor: 1. for his failure to locate, recover, or demand misappropriations or transfers without adequate consideration from Defendant Noyes; and, 2. for bringing suit against the debtor to recover a gun while receiving salary and expenses.[13]

Based on these allegations, the Committee makes the following legal claims against Defendants Noyes and Wilkinson:

1. Against Noyes as a director of the insolvent corporation for misfeasance, nonfeasance, or malfeasance in respect to the alleged waste of corporate assets, misappropriations, self-dealings, excessive salaries, transfers for inadequate considerations resulting in breach of fiduciary duties and negligence;

2. Against Noyes personally as either the recipient of fraudulent conveyance(s) or unjust enrichment by the transfers/conveyances made on the insurance and pension plan paid for out of an insolvent corporate funds; and

3. Against Wilkinson for his failure to prevent preferential payments or pursue corporate assets resulting in negligence and breach of fiduciary duties to the insolvent corporation, and for receiving, while a creditor with an adverse interest, salary and expenses as president and director of the debtor in derogation of 11 U.S.C. §§ 327(a) and 328(c).

## DISCUSSION

### A. SUBJECT MATTER JURISDICTION AND POWER TO ENTER A FINAL ORDER

A question to be resolved by us is whether and to what extent we have jurisdiction to adjudicate the merits of this adversary

**12.** At the time this case was before the Second Circuit, *In re STN Enterprises, supra,* 779 F.2d 901 (2d Cir.1985), Defendant Wilkinson and others were not listed as a proposed Defendants by the Committee. After hearings and arguments on the Committee's request for leave to commence this Adversary Proceeding against, Defendants Noyes and others, this Court issued its May 29, 1986 Order, *supra,* which stated, *inter alia:* "It is ORDERED that the unsecured Creditor's Committee is allowed to institute consolidated adversary proceedings against Janice and *others.*" (Emphasis supplied). Defendant Wilkinson answered the Committee's complaint on November 17, 1986 asserting, *inter alia,* a Rule 7012(b) motion to dismiss the counts against him because the Committee had not listed Defendant Wilkinson in the proposed complaint submitted at the March 11, 1986 and May 29, 1986 request for leave hearings and was not within the contemplation or authorization of this Court either when leave was granted or prior to the Committee's commencement of this Adversary Proceeding. We recall from page 19 of the March 11, 1986 transcript the request from the Committee's Counsel: "May I also request permission then to bring in all potential defendants that I think we have a cause of action against ... such as the President of the debtor ..." Clearly, this Court contemplated, *inter alia,* Defendant Wilkinson as *"others."*

Furthermore, Defendant Wilkinson cannot complain that he was not given an opportunity to object prior to a complaint being filed and served upon him, since his standing to do so is questionable. Our judicial system permits defendants to be unaware of complaints until they are served with one.

**13.** The relevant Committee's averments:

"71. Upon information and belief, the defendant, John Wilkinson, in the course of his duties as Officer and Director of debtor, took no steps to locate and/or recover corporate assets which had been diverted, wasted and/or misappropriated ...
72 ... failed to take any steps to preserve and protect the remaining assets of the debtor and to prevent the transfer ... without adequate consideration ...
73 ... failed to demand payment from Janice Noyes ...
77 ... while remaining an Officer and Director of the debtor, brought suit against debtor for return of a gun ...
79. Pursuant to 11 U.S.C. § 327(a) only disinterested persons who do not hold an interest adverse to the estate of the debtor may be employed by the debtor in possession.
80. Defendant Wilkinson ... is not a disinterested person, and pursuant to 11 U.S.C. § 328(c), he should therefore be denied compensation for acting as President of debtor."
On February 21, 1986, Defendant Wilkinson, in his individual capacity, filed a complaint to recover assets allegedly wrongfully and improperly held by the debtor in possession.

proceeding. We consider the Fed.Rules Civ.Proc. Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction first, since if we grant the 12(b)(1) motion, the remaining defenses and objections would become moot. *See*, 5 *Wright & Miller*, § 548.

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted and may decided only after finding subject matter jurisdiction because to rule on the validity of a claim is in itself an exercise of jurisdiction. *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

In response to the United States Supreme Court's opinion in *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), (*Marathon*), Congress, concerned over balancing the then existing bankruptcy scheme with the Supreme Court's prohibition against vesting Article III powers over the Bankruptcy laws in Article I Courts, enacted the Bankruptcy Amendment and Federal Judgeship Act of 1984 ("BAFJA").[14] *In re L.H. & A. Realty, Inc.*, 62 B.R. 910, 915–16, 15 C.B.C.2d 34 (Bankr.Vt.1986); *Leake v. Chandler*, 54 B.R. 942, 946 (W.D.VA 1985); *Acolyte Elec. Corp. v. City of New York*, 69 B.R. 155, 162 (Bankr.E.D.N.Y.1986); *Atlas Fire Apparatus, Inc. v. E.M. Beaver (In re Atlas Fire Apparatus, Inc.)*, 56 B.R. 927, 931, 13 BCD 1304, 14 C.B.C.2d 429 (Bankr. E.D.N.C.1986).

"BAFJA" provides that District Courts shall have original and exclusive jurisdiction of all cases under Title 11, 11 U.S.C. §§ 101 *et seq.*, and original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11.

28 U.S.C. § 1334[15] and 28 U.S.C. § 157,[16] respectively, define the source and limits of

**14.** *See*, footnote 8.

**15.** 28 U.S.C. §§ 1334(a), and (b) provides:

**"Bankruptcy cases and proceedings**
(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

**16.** 28 U.S.C. § 157. **Procedures**
"(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.
(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
(2) Core proceedings include, but are not limited to—
  (A) matters concerning the administration of the estate;
  (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
  (C) counterclaims by the estate against persons filing claims against the estate;
  (D) orders in respect to obtaining credit;
  (E) orders to turn over property of the estate;
  (F) proceedings to determine, avoid, or recover preferences;
  (G) motions to terminate, annul, or modify the automatic stay;
  (H) proceedings to determine, avoid, or recover fraudulent conveyances;
  (I) determinations as to the dischargeability of particular debts;
  (J) objections to discharges;
  (K) determinations of the validity, extent, or priority of liens;
  (L) confirmations of plans;
  (M) orders approving the use or lease of property, including the use of cash collateral;
  (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and
  (O) other proceeding affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.
(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A

the subject matter jurisdiction and power of bankruptcy courts. Four categories are provided by this jurisdictional scheme:

"a) A case under Title 11;

b) A civil proceeding arising under Title 11;

c) A civil proceeding arising in a case under Title 11; and

d) A civil proceeding related to a case under Title 11."

*Taxel v. Commercebank (In re World Financial Services Center, Inc.)*, 64 B.R. 980, 982, 15 C.B.C.2d 836, 838 (Bankr.S.D. Cal.1986). *See also, Allis-Chalmers Corp. v. Borg-Warner Acceptance Corp. (In re Dr. C. Huff Co., Inc.)*, 44 B.R. 129, 134, 11 C.B.C.2d 1039 (Bankr.W.D.Ky.1984) (three classes of legal controversies: 1. core cases; 2. non-core related cases; and 3. non-core unrelated cases).

Pursuant to 28 U.S.C. § 157(a), the District Courts may provide that any or all cases under Title 11 and any or all proceedings arising in or related to a case under Title 11 shall be referred to Bankruptcy Judges for the district. The United States District Court for the District of Vermont has referred these cases to this Bankruptcy Court by Chief Judge Albert W. Coffrin's Order of May 14, 1986.[17]

28 U.S.C. §§ 157(c)(1) and (2) provides that a Bankruptcy Judge may hear non-core proceedings, that are otherwise related to a case under Title 11, but may not enter a final order or judgment without the consent of the parties and must submit proposed findings of fact and conclusions of law for the District Court's de novo review. *Supra*, n. 16.

"In general, district courts routinely refer bankruptcy cases and related proceedings to the bankruptcy court within its judicial district. (28 U.S.C. § 157(a)). When a proceeding is referred by the district court to the bankruptcy court, the role of the bankruptcy judge depends on whether the matter is a 'core proceeding' or a 'non-core proceeding.' If a matter is a core proceeding, the bankruptcy judge may hear and determine the issues and may enter appropriate orders and judgments subject to traditional review. (28 U.S.C. §§ 157(b)(1) and 158).

The 1984 Amendments define the term 'core proceeding' setting forth the follow-

---

determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

(4) Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2).

(5) The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."

17. Chief Judge Albert W. Coffrin's May 16, 1986 *"ORDER"* provides:

"Pursuant to the provisions of Section 157 of the Bankruptcy Amendment and Federal Judgeship Act of 1984, Public Law 98–353, it is hereby ORDERED:

Effective forthwith all cases arising under Title 11 of the United States Code and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11, shall be, and hereby are, referred to the Honorable Francis G. Conrad, Bankruptcy Judge for the District of Vermont.

All matters referred to the Honorable Francis G. Conrad under Title 11 of the United States Code and actions taken by him pursuant thereto from August 1, 1985 to the date of the Order are hereby ratified and confirmed."

ing nonexclusive list of matters (28 U.S.C. § 157(b)(2)) that arise often in a bankruptcy case ... If there is uncertainty or a dispute regarding the classification of a matter as either a core or non-core proceeding, the bankruptcy judge must determine the appropriate classification. Such a determination may be made sua sponte or on motion of a party. The 1984 Amendments make it clear that a matter shall not be deemed a non-core proceeding solely because its resolution may be affected by state law. (28 U.S.C. § 157(b)(3)).

A non-core proceeding that is otherwise related to a bankruptcy case may be heard by a bankruptcy judge nonetheless. If the district court and all the parties to the non-core proceeding consent, the bankruptcy judge may determine the matter and enter appropriate orders and judgments as if it is a core proceeding. However, if the non-core proceeding is referred to the bankruptcy court without such consent to make final determinations, the bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court. Only the district judge may enter final orders and judgments in such situations. The district judge considers the bankruptcy judge's proposed findings and conclusions but is required to review de novo those matter to which any party has timely and specifically objected ..." (28 U.S.C. §§ 157(c)(1), (c)(2)).

B. Weintraub & A. Resnick, *Bankruptcy Law Manual* 6–15–6–20. (statutory parentheticals supplied for reference).

The distinction between core and non-core, though a Sisyphean task, is important because the authority to render a final decision by this Court, (*i.e.*, assuming the absence of the parties consent), depends upon whether the proceeding is a "core proceeding" or ·a "non-core proceeding". Because of the reference, *supra*, this Court has subject matter jurisdiction to hear either core or noncore-related proceedings.

Pursuant to 28 U.S.C. § 157(b)(3), *supra*, n. 16, this Court has the mandatory obligation to determine whether a proceeding

is a core or non-core, the latter of which is defined as "a proceeding that is otherwise related to a case under Title 11" *id.*

"Core" is not defined, nor is it limited to the fifteen nonexclusive categories contained in 28 U.S.C. § 157(b)(2). Some courts have confined themselves to a narrow approach in ascertaining the scope of what matters may be core, while others have taken a more expansive approach. *See, Atlas Fire Apparatus, Inc. v. Beaver (In re Atlas Fire Apparatus, Inc.),* 56 B.R. 927, 932, 14 C.B.C.2d 429, 13 B.C.D. 1304 (Bankr.E.D.N.C.1986) (listing of representative cases within the two camps).

We note at the outset that the mere characterization of an adversary proceeding within the core terms of 28 U.S.C. §§ 157(b)(2)(A)–(O) will not be dispositive as to whether actions do in fact constitute core proceedings. *Taxel v. Commercebank (In re World Financial Services Center, Inc.),* 64 B.R. 980, 986, 15 C.B.C.2d 836, 843 (Bankr.S.D.Cal.1986). We also note, that just because the Committee's causes of action may turn on state law, this will not, *ipso facto*, turn this adversary proceeding into non-core proceeding. 28 U.S.C. § 157(b)(3); *Mann v. Kreiss (In re Kreiss),* 58 B.R. 999, 1004 (E.D.N.Y.1986); *In re Tom Carter Enterprises, Inc.,* 44 B.R. 605, 609 (C.D.Cal.1984). Furthermore, we are ever mindful of *Marathon's* plurality holding and Article III proscriptions:

"[T]he 'adjunct' bankruptcy courts created by the Act [1978, 28 U.S.C. § 1471] exercise jurisdiction behind the facade of a grant to the district courts, and of exercising powers far greater than those lodged in the adjuncts approved in either *Crowel [Crowel v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932) ] or *Raddatz [U.S. v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ]."

*Northern Pipeline Constr. Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 87, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982) (brackets supplied for clarity). As one court so interpreted *Marathon:*

"[T]he constitutional ability of an adjunct bankruptcy court to determine state law

issues is to be determined by the nature and extent of control by Article III courts and whether there is a nexus between the proceeding involving a state law cause of action and the bankruptcy estate."

*Lesser v. A–Z Associates (In re Lion Capital Group)*, 46 B.R. 850, 856 (Bankr.S.D.N.Y.1985), *affirmed*, 63 B.R. 199 (S.D.N.Y. 1986). *See also, Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582 (2d Cir.1983); *Mann v. Kreiss (In re Kreiss)*, 58 B.R. 999, 1004 (E.D.N.Y.1986); *In re Satelco*, 58 B.R. 781, 786, 14 C.B.C.2d 487 (Bankr.N.D. Tex.1986).

"*Marathon* only invalidated the jurisdiction of the bankruptcy court to make final determinations in matters that could have been brought in a district court or a state court (i.e., related proceedings)...in. no way did *Marathon* implicate the jurisdiction of the bankruptcy courts in other matters within the 'traditional' bankruptcy jurisdiction. The Court's invalidation of the jurisdictional grant was on separability grounds, not on the grounds that bankruptcy courts could not adjudicate traditional bankruptcy matters."

*Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1580 (2d Cir.1983) (citation and footnote omitted).

The Committee, on behalf of the DIP, urges this Court to find its claims of breach of fiduciary duties, fraudulent conveyances, preferential transfers, preferential payments, and negligence fall within the core proceedings category of 28 U.S.C. §§ 157(b)(2): "(A) (matters concerning the administration of the estate); ... (F) (proceedings to determine, avoid, or recover preferences); ... (H) (proceedings to determine, avoid, or recover fraudulent conveyances); ... (O) (other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship)...". Committee's *Memorandum of Unsecured Creditors' Committee in Opposition to Janice Noyes' Motion to Dismiss*, pages 2–3.

The Committee argues that the Defendants have consented to this Court's jurisdiction and authority to render a final order either as a core matter, 28 U.S.C. § 157(b)(2)(C), or a non-core-related matter, 28 U.S.C. § 157(c)(2), by virtue of Defendants having filed declaratory and conversion actions in separate adversary proceedings within this Case. (Defendant Noyes filed a declaratory action concerning the pension plan proceeds, *See*, n. 10, *supra;* Defendant Wilkinson, DIP's president and director, filed an adversary proceeding, on his own behalf, to recover a revolver allegedly being wrongly and improperly held by DIP, *See*, n. 13, *supra* ).

As one treatise describes the various categories of 28 U.S.C. § 157(b)(2) core proceedings:

"Section 157(b)(2) contains fifteen illustrations of core proceedings. There are four convenient categories into which these illustrations can be put. These are (a) matters of administration, (b) avoiding actions, (c) matters concerning property of the estate, and (d) others ... In category (a), matters of administration, fall: '(A) matters concerning the administration of the estate' ... Category (b), avoiding actions, include the types of proceedings contained in section 157(b)(2)(F)-and (H), preferences and fraudulent conveyances ... While other avoiding actions, such as those arising under sections 544, 545 and 549, are not included in the list of section 157(b)(2), there can be no doubt that these, too, are core proceedings ... The third category, matters concerning property of the estate, includes '(E) orders to turn over property of the estate' ... The last, or omnibus category ... This category includes the matters ·set out in section 157(b)(2)(C) counterclaims by the estate against persons filing claims against the estate' and section 157(b)(2)(O), 'other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ...' "

1 *Collier on Bankruptcy*, § 3.01[iii] pages 3–35, 3–39 (15th Ed.1986); *see also, Lesser v. A–Z Associates (In re Lion Capital*

*Group),* 46 B.R. 850, 854 (Bankr.S.D.N.Y. 1985).

The Committee contends that its proceeding should be considered a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O), commonly referred to as the "catchall" provisions of 28 U.S.C. § 157(b), *supra,* n. 16, because:

> "In the present case, disposition of this adversary proceeding is also essential to an orderly administration of the debtor's estate. The Unsecured Creditors' Committee is claiming damages in excess of $7 million against Janice Noyes on behalf of the debtor. Obviously, the success of the adversary proceeding would have a substantial impact on the administration of the estate of this otherwise insolvent debtor."

*Memorandum of Unsecured Creditors' Committee in Opposition to Janice Noyes' Motion to Dismiss,* page 4. By the just quoted statement, the Committee has not stated the test for a matter to be core, but rather, has stated the definition of a related matter:

> "The usual articulation of the test for determining whether a civil proceeding is related to a bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy* ... an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate."

*Bobroff v. Continental Bank (In re Bobroff),* 766 F.2d 797, 802 (3d Cir.1985) *citing In re Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984) (emphasis in original).

▋ We adopt the view that 28 U.S.C. §§ 157(b)(2)(A) and (O), "catchall" provisions requires something more than a mere bald and unilluminated self-serving declaration that a recovery would benefit the debtors' estate to constitute a core proceeding:

> "The flaw in this reasoning is that were plaintiff's argument to prevail, *Mara-*

*thon* itself would constitute a core proceeding and BAFJA would be as unconstitutional as was the predecessor statute that it sought to remedy."

*Acolyte Elec. Corp. v. City of New York,* 69 B.R. 155, 172 (Bankr.E.D.N.Y.1986). *See also, Atlas Fire Apparatus, Inc. v. Beaver (In re Atlas Fire Apparatus, Inc.),* 56 B.R. 927, 934, 14 C.B.C.2d 429, 13 BCD 1304 (Bankr.E.D.N.C.1986) (opted for a different core category under § 157(b)(2) rather than using the "catchall"); *R.I. Lithograph Corp. v. Aetna Casualty and Surety Co. (In re R.I. Lithograph Corp.),* 60 B.R. 199, 203–04, 14 C.B.C.2d 1023, 14 BCD 493 (Bankr.R.I.1986) (successful claim of an unliquidated dispute is a factor for a related, non-core proceeding); *but see, Allard v. Benjamin (In re Delorean Motor Co.),* 49 B.R. 900, 907, 13 C.B.C.2d 339 (Bankr.E.D.MI 1985) (applied "catchall", representative of the expansive "clearly affecting" the estate test).

While we appreciate that Congress intended, by its extremely comprehensive language in 28 U.S.C. §§ 157(b)(2)(A) and (O), for core proceedings to be applied as broadly as possible, we also acknowledge:

> "To be a core proceeding, an action must have as its foundation the creation, recognition, or adjudication of rights which would not exist independently of a bankruptcy environment although of necessity there may be a peripheral state law involvement. Congress gave bankruptcy courts flexibility to carry out the provisions of Title 11 by inserting the catchall provisions in the framework of § 157 realizing that situations not foreseeable at the time of BAFJA's enactment would have to be dealt with in that court. However, any reasonable reading of §§ 157(b)(2)(A) and (O) should be kept within this framework and therefore within the holding in *Marathon.*"

*Acolyte Electric Corp. v. City of New York,* 69 B.R. 155, 173–74 (Bankr.E.D.N.Y. 1986). In *Acolyte Electric Corp., supra,* 69 B.R. at 175, the court, after citing numerous court decisions that held garden variety state law contract actions are core proceedings under the catchall provisions,

[including, *Lesser v. A–Z Associates (In re Lion Capital Group)*, 46 B.R. 850 (Bankr. S.D.N.Y.1985)], held a debtor's breach of contract action was not a core proceeding simply because the outcome could result in funds being brought into the estate; but rather, it was a related proceeding. We agree. *See also, Palmisano v. Briggs (In re Northern Design Inc.)*, 53 B.R. 25, 27 (Bankr.Vt.1985) (holding trustee's § 542 turnover contract action on debtor's pre-petition construction contract was non-core-related action; however, while the Court had jurisdiction over this related matter, in view of defendant's jury demand, it transferred the case to the District Court for reasons of judicial economy).

■ The Committee's second cause of action against Defendant Wilkinson seeks Wilkinson's salary and expenses as DIP's president and director during bankruptcy because his suit against the DIP for any number of reasons makes him an interested person. See n. 13. This cause of action is clearly a core matter, (and not merely a related matter), within the terms of 28 U.S.C. § 157(b)(2)(A), because only the Bankruptcy Court may approve or deny the employment and compensation of Wilkinson as a professional person under 11 U.S.C. §§ 327(a) and 328(c).[18] *See, Robbins v. Schuyler (In re United Equipment Sales Co.)*, 47 B.R. 818, 822 (Bankr.W.D. Mich.1985) (president of debtor in possession liable for violation of fiduciary duty and ordered to surcharge his salary for his failure to remedy unpaid withholding taxes and drawing salary when debtor could not meet bills and taxes). *See also, Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.)*, 815 F.2d 165 (1st Cir. 1987) (action of a DIP to collect a post-petition debt falls within 28 U.S.C. § 157(b)(2)(A)).

As to Defendant Noyes, however, we need not rely upon 28 U.S.C. §§ 157(b)(2)(A) and (O), "catchalls", to find that we have the authority to enter a final order over the Committee's causes of action as a core matters. *See,* n. 8 *supra.*

Though not articulated, the Committee appears to argue:

1. that this proceeding is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(C) and this Court has jurisdiction to render a final judgment and order on the Committee's claims because Defendants Noyes and Wilkinson had filed their respective declaratory and adversary proceedings which arose out of the same series of transactions giving rise to Defendants' claims against the DIP; or,

2. even where the Committee, on behalf of the DIP, files an adversary proceeding, asserting clearly state law claims, was a non-core and related proceeding, Defendants, by their actions, implicitly consented to this Court rendering a final order which, because of the district court's reference, it has the power to do under 28 U.S.C. § 157(c)(2).

Initially, Defendants seek to have the Committee's causes of action declared non-core because they arise under state law. But, as Chief Judge John F. Ray, Jr., United States Bankruptcy Court, Middle District of Tennessee, keenly noted in *Canadian Shield Financial Corp., Ltd. v. Estate of Irwin A. Deutscher (In re Vincent)*, 68 B.R. 865, 866 (Bankr.M.D.Tenn.1987):

---

**18.** 11 U.S.C. § 327(a), **Employment of Professional persons,** provides:

"(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."

11 U.S.C. § 328(c), **Limitation on compensation of professional persons,** provides:

"(c) Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may

deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." Defendant Wilkinson's employment as a DIP's "professional person" was approved by this Court's predecessor, Bankruptcy Judge Charles J. Marro on August 17, 1984.

"Defendants seek to have these causes of action declared non-core, because they arise under state law. Defendants rely heavily on *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), in support of their position. However, *Marathon* has been considerably vitiated by two later Supreme Court cases, *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed. 409 (1985) and *Commodity Futures Trading Commission v. Schor*, —— U.S. ——, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986)."

After explaining the effects of *Schor* and *Thomas* on *Marathon's* concerns over the personal rights of litigants to have their claims tried by an Article III court and the doctrine of separation of powers, Chief Judge Ray explained that those personal rights were subject to waiver by a litigant's consent, and, in a post bankruptcy petition context:

"Those who deal with the debtor in its capacity as the debtor or debtor-in-possession have impliedly consented to have their claims tried by the bankruptcy court, for all of the reasons that the bankruptcy system was implemented, *e.g.*, speedy resolution of disputes and administration of the estate with a view to fairness for all creditors."

*Canadian Shield Financial Corp., Ltd. v. Estate of Irwin A. Deutscher (In re Vincent)*, 68 B.R. 865, 867 (Bankr.M.D.Tenn. 1987).

While we note that *Marathon's, supra*, 458 U.S. 50, at 79 n. 31, 102 S.Ct. 2858, at 2876 n. 31 (1982), reservations appear to cast doubt on the efficacy of *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed. 391 (1966), pre-*Marathon's* premise that jurisdiction by consent by one who files a claim in a bankruptcy proceeding is subject to the summary jurisdiction of the bankruptcy court, *see, Nanodata Computer Corp. v. Kollmorgen Corp. (In re Nanodata Computer Corp.)*, 52 B.R. 334, 342 (W.D.N.Y.1985), we agree with the rationale, of the court in *Long Island Lighting Co. v. Bokum Resources Corp. (In re Bo-*

*kum Resources Corp.)*, 64 B.R. 924, 928–30 (Bankr.N.M.1986), that the Supreme Court's post *Marathon's* decisions in *Thomas, supra*, 473 U.S. at 591, 105 S.Ct. at 3339, and *Schor, supra*, —— U.S. at ——, 106 S.Ct. at 3258, confirm the concept of jurisdiction by consent to an Article I court adjudication, express or implied, as a waiver of a litigant's personal right to an adjudication by an Article III court:

"Without inquiring into the effect of the particular appellate remedy, one can conclude from *Schor* that the Supreme Court has not only reaffirmed, but has expanded, the jurisdiction by consent concept of *Katchen v. Landy*. In *Katchen* the counterclaim was premised on a statutorily-created right. In *Schor*, as noted above, (*Schor, supra*, —— U.S. at ——, 106 S.Ct. at 3258), the Court observed that *Katchen* upheld the bankruptcy court's power to hear and decide state law counterclaims against creditors who filed a claim "when those counterclaims arose out of the same transactions." Thus a fair reading of *Schor* leads to the conclusion that the controversy in this case, involving counterclaims which arose out of the same transactions giving rise to the claim filed by LILCO, (creditor), is a core proceeding within the meaning of 28 U.S.C. § 157 as to which this Court has the jurisdiction to both hear the proceeding and enter final judgment."

*Long Island Lighting Co. v. Bokum Resources Corp. (In re Bokum Resources Corp.)*, 64 B.R. 924, 930 (Bankr.N.M.1986) (parentheticals supplied for clarity). *See also, Bedford Computer Corp. v. Ginn Pub., Inc.*, 63 B.R. 79, 82 (D.C.N.H.1986); *Lombard-wall Incorporated v. New York City Housing Development Corp. (In re Lombard-Wall Incorporated)*, 48 B.R. 986, 990–91, 13 C.B.C.2d 161, 13 BCD 236 (S.D. N.Y.1985); *Sun West Distributors, Inc. v. Grumman Energy Systems Co. (In re Sun West Distributors, Inc.)*, 69 B.R. 861, 865 (Bankr.S.D.Cal.1987); *Canadian Shield Financial Corp. Ltd. v. Estate of Irwin A. Deutscher (In re Vincent)*, 68 B.R. 865, 868 (Bankr.M.D.Tenn.1987); *but see, Nanodata Computer Corp. v. Koll-*

*morgen Corp. (In re Nanodata Computer Corporation)*, 52 B.R. 334, 342–43, 13 BCD 488 (Bankr.W.D.N.Y.1985) (labeling this method of finding implicit consent to a bankruptcy court's power to render final orders over parties in non-core-related matters as "jurisdiction by ambush").

■ By filing a personal adversary proceeding, Wilkinson has not only provided for the same series of transactions as the Committee's second cause of action, for surcharge under 11 U.S.C. §§ 327(a) and 328(c), but he has also given his implicit consent to this Court's adjudication over the Committee's second cause of action as a non-core-related matter which further enables this Court, because of the reference, to enter a final order under 11 U.S.C. § 157(c)(2). This is in addition to our authority to enter a final order from our determination, *supra*, that this second cause of action is a core matter under 11 U.S.C. § 157(b)(2)(A).

■ Defendant Wilkinson's personal cause of action for recovery of assets does not, however, arise out of the same series of transactions as the Committees' first cause of action for his alleged breach of fiduciary duty to DIP by his failures to take any steps to trace or recover misappropriated corporate funds, assets, or preferential payments. The Committee's first cause of action and Wilkinson's claim does not rise to the level of similar transactions or occurrences required for a core matter under 28 U.S.C. § 157(b)(2)(C) nor does it constitute the degree of consent required as a noncore-related matter within 28 U.S.C. § 157(c)(2) for this Court to enter a final order. Since we already have jurisdiction over the Committee's second cause of action against Wilkinson as either a core matter or a noncore-related matter with power to enter a final order via consent,

*supra*, in the interest of judicial economy, we now hold that the entire proceeding against Wilkinson is a core matter and that we have jurisdiction to enter a final order on both causes of action:

> "For I believe that, when a proceeding is in part a core proceeding and in part non-core, the courts may determine that the entire proceeding is core if the core aspect heavily predominates and the non-core aspect is insignificant."

*Blackman v. Seton (In re Blackman)*, 55 B.R. 437, 443 (Bankr.D.C.1985).

■ Defendant Noyes presents the more difficult question on the issue of *Katchen* "consent" under 28 U.S.C. § 157(b)(2)(C) as a core matter or under 28 U.S.C. § 157(c)(2) as a non-core-related matter. Defendant Noyes has filed a declaratory action against the DIP and the administrator of a pension plan to obtain an order from this Court declaring her the proper beneficiary of the pension plan; and to direct the administrator to pay her the benefits due under the plan. Defendant Noyes further claims that the distribution of the pension plan proceeds have been blocked by the Committee.

Had Defendant Noyes filed her proceeding in this Court prior to the Committee's action,[19] the Committee could have simply filed a Rules of Bankruptcy Practice and Procedure Rule 7013 counterclaim [20] on behalf of the DIP and asserted the same causes of action now before this Court. Indeed, Rules of Bankruptcy Practice and Procedure Rule 7013 does not require the Committee to denominate their claim against Noyes as a counterclaim. *See* n. 20 *supra*. Furthermore, similar result would occur if this Court were to consolidate the two actions and realign the parties.

---

**19.** The original attempt by the Committee to sue Noyes was filed prior to the present complaint at issue in this proceeding.

**20.** Rule 7013, **Couterclaim and Cross-Claim,** provides:

"Rule 13 F.R.Civ.P. applies in adversary proceedings, except that a party sued by a trustee or debtor in possession need not state as a counterclaim any claim which he has against

the debtor, his property, or the estate, unless the claim arose after the final entry of an order for relief. A trustee or debtor in possession who fails to plead a counterclaim through oversight, inadvertence, or excusable neglect, or when justice so requires, may by leave of court amend the pleading, or commence a new adversary proceeding or separate action."

Not only do the proceedings of the Committee and Noyes arise out of the same series of transactions, but both parties seek, *inter alia*, the same res, *i.e.* the pension plan proceeds. *See Lombard-Wall Incorp. v. New York City Housing Development Corp. (In re Lombard-Wall Incorp.)*, 48 B.R. 986, 990–91, 13 C.B.C.2d 161, 13 BCD 236 (S.D.N.Y.1985). This argument has further appeal when one considers the fact that Defendant Noyes has purposely availed herself of our jurisdiction by asking for a final order in her declaratory action and yet now she seeks to have us declare the Committee's action as non-core but related and thus, prohibit us from rendering a final order absent her consent. *See DuVoisin v. Foster (In re Southern Industrial Banking Corp.)*, 809 F.2d 329, 331 (6th Cir.1987).

We admire her legal posturing, but we think it is too late for Defendant Noyes to complain that we cannot enter, either as a core matter under 28 U.S.C. § 157(b)(2)(C) or as a non-core-related matter with consent and district court's reference under 28 U.S.C. § 157(c)(2), a final order concerning the pension plan proceeds given the similarity in the operative transactions, res, and Noyes's implicit consent.

As for the remaining claims by the Committee against Noyes, we find the Committee's adversary proceeding against Defendant Noyes is also a core matter under 28 U.S.C. §§ 157(b)(2)(F) and (H). We need not rest our authority to render a final order over the matter solely on 28 U.S.C. § 157(b)(2)(C), or 28 U.S.C. § 157(c)(2).

28 U.S.C. §§ 157(b)(2)(F) and (H) provide that proceedings to determine, avoid, or recover preferences and proceedings to determine, avoid, or recover fraudulent conveyances, respectively, constitute core proceedings.

In *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582–83 (2d Cir.1983), (pre–1984 BAFJA), the Second Circuit, affirmed the District Court and upheld as constitutional the final Bankruptcy Court order which granted, *inter alia*, a trustee's demand for imposition of a constructive trust upon assets which the debtor, while insolvent, transferred pre-petition to his wife, who provided no consideration for those transfers, as part of the debtor's scheme to hide assets and defraud his creditors in bankruptcy. Under the Emergency Rules,[21] the Second Circuit in *Kaiser* rejected defendant's claim that it was merely a related matter and held:

> "It is certainly true that state courts commonly impose constructive trusts. What appellant ignores, however, is that this action was brought as a result of his fraudulent transfers in light of the bankruptcy laws. This action is inextricably tied to the creation of the estate in bankruptcy for the benefit of Gerald Kaiser's creditors; there would be no cause of action without the federal bankruptcy statutes that authorize it. In other words, federal law provides the *right* upon which the remedy of constructive trust sought here is based."

*Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582 (2d Cir.1983) (emphasis in original). *See also, Mann v. Kreiss (In re Kreiss)*, 58 B.R. 999, 1004–05 (E.D.N.Y. 1986) (discussed *Kaiser* as holding in part that an action to impose a constructive trust is a core proceeding); *Acolyte Elec. Corp. v. City of New York*, 69 B.R. 155, 169 (Bankr.E.D.N.Y.1986) ("The critical point made by *Mann v. Kress* and *Salomon v. Kaiser* is that where a cause of action 'has no life of its own in either state or federal common law or statute independent of the federal bankruptcy laws,' then it is a core proceeding").

After finding the debtor's transfers were made during insolvency to his wife, who provided no consideration for the transfers, the Second Circuit in *Kaiser, supra,* held:

> "In sum, there was ample basis for the bankruptcy judge to conclude that appel-

---

21. At the time *Kaiser* was decided, 28 U.S.C. § 1471(c), which granted jurisdiction to the bankruptcy courts, was deemed invalidated by *Marathon;* however, the Emergency Bankruptcy Rule was in effect until Congress enacted The Bankruptcy Amendments and Federal Judgeship Act of 1984 (Pub.L. § 98–353) on July 10, 1984. Under the amendments, 28 U.S.C. § 1471 was replaced by 28 U.S.C. § 1334.

lant intended to hinder, delay or defraud his creditors. The findings of fact were not erroneous and will not be set aside. The denial of discharge was proper ... [T]he premises could be impressed with a constructive trust. *Banister v. Solomon,* 126 F.2d 740, 741 (2d Cir.1942) (L. Hand, J.) (trustee in bankruptcy may have a constructive trust impressed on premises conveyed to debtor's wife where debtor provided the funds to purchase the property while he was insolvent); *Elliott v. Elliott,* 365 F.Supp. 450 (S.D.N.Y.1973); *In re Rodriguez,* 24 B.R. 12 (Bkrtcy.S.D.Fla.1982)."

*Salomon v. Kaiser (In re Kaiser), supra,* 722 F.2d at 1583–84 (footnote omitted).

■ The gravamen of the Committee's complaint against Defendant Noyes seeks, *inter alia,* to impose a trust upon tangible and intangible assets of the insolvent corporation that had been wrongfully converted, wasted or fraudulently transferred to the detriment of the corporation by those responsible for the corporation's control and ultimate demise. As we noted *supra,* in light of the debtor's unjustifiable failure, the Committee, on behalf of the DIP, commenced this adversary proceeding for, *inter alia,* fraudulent conveyances, unjust enrichment, and breach of fiduciary duty: "Where a corporation is defrauded bringing about ultimate bankruptcy, a cause of action exists on the part of the corporation against the wrongdoer." *Warren v. Manufacturers National Bank,* 759 F.2d 542, 545 (6th Cir.1985). *See also, Delgado Oil Co., Inc. v. Torres,* 785 F.2d 857, 860 (10th Cir.1986) ("[T]he filing of bankruptcy petition by a corporation deprives the district court of jurisdiction to try the issue of a preferential transfer by a corporate director and vests the bankruptcy court with exclusive jurisdiction."); *American National Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica),* 714 F.2d 1266 (5th Cir.1983) (affirmed district court's affirmation of bankruptcy court's holding state law fraudulent transfer causes of action against individual who controlled corporate debtor were property of the estate); *Atlas Fire Apparatus, Inc. v. Beaver (In re Atlas Fire Apparatus, Inc.),*

56 B.R. 927, 934, 14 C.B.C.2d 429 (Bankr.E.D.N.C.1986) (refusing to abstain or withdraw reference, finding, *inter alia,* state law fraudulent conveyance to be a core matter); *Allard v. Benjamin (In re Delorean Motor Co.),* 49 B.R. 900, 907, 13 C.B.C.2d 339 (Bankr.E.D.Mich.1985) (applied expansive "clearly affecting" test to find breach of fiduciary duty is a section 157(b)(2)(O), "catchall", core matter). *Compare, Weaver v. Gillen,* 49 B.R. 70, 71 (W.D.N.Y.1985) (Holding debtor's postpetition breach of fiduciary claim against trustee was non-core-related proceeding because money damages would not accrue to either the estate or benefit its creditors); *But see, Slutsky v. Byrd (In re Byrd),* 51 B.R. 645, 649 (Bankr.S.D.Ohio 1985) (non-core-related holding, where trustee relied solely upon state statute with a longer statute of limitations, on fraudulent transfer cause of action).

We conclude that this Court has subject matter jurisdiction, and the power to enter a final order in the Committee's adversary proceeding against Defendant Noyes and Defendant Wilkinson.

Having resolved this Court's jurisdiction over the subject matter and the power to render a final order, we now consider Defendants' challenge to the Committee's standing and their Rules of Bankruptcy Practice and Procedure Rule 7012(b) motions to dismiss the Committee's complaint for failure to state a claim upon which relief can be granted.

## B. COMMITTEE'S STANDING

We turn first to the Defendants' arguments that the Committee lacks standing or capacity to maintain this adversary proceeding on behalf of debtor in possession, for without standing there can be no adversary proceeding.

In *Unsecured Creditors Committee of Debtor STN Enterprises, Inc. v. Noyes (In re STN Enterprises),* 779 F.2d 901 (2d Cir. 1985), the Second Circuit, while acknowledging that usually a trustee or the debtor in possession initiates proceedings to recov-

er preferentially or fraudulently transferred assets, held:

"The Bankruptcy Code, however, contains no explicit authority for creditors' committees to initiate adversary proceedings. Most bankruptcy courts that have considered the question have found an implied, but qualified right for the creditors' committees to initiate adversary proceedings in the name of the debtor in possession under 11 U.S.C. §§ 1103(c)(5) and 1109(b) ... These courts have allowed creditors' committees to initiate proceedings only when the trustee or debtor in possession unjustifiably failed to bring suit or abused its discretion in not suing to avoid a preferential transfer. We agree with these bankruptcy courts that 11 U.S.C. §§ 1103(c)(5) and 1109(b) imply a qualified right for creditors' committees to initiate suit with the approval of the bankruptcy court."

*In re STN Enterprises, supra,* 779 F.2d at 904 (2d Cir.1985) (citations omitted).[22]

Critical to the Second Circuit's analysis is the distinction between the insolvent and solvent status of a corporation when one of its directors is under attack for, *inter alia,* breach of fiduciary duty by a corporate creditor:

"The district court's ruling failed to take into account that, although in most states directors of a *solvent* corporation do not owe a fiduciary duty to creditors, quite the reverse is true when the corporation becomes insolvent ... Thus, the 'majority rule' permits recovery by creditors of an insolvent corporation for mismanagement as if the corporation itself were the plaintiff ... while the 'minority rule' precludes suit by injured creditors of an insolvent corporation ... although a suit for misappropriation or diversion

of corporate property may stand on different and more solid footing ..."

*In re STN Enterprises, supra,* 779 F.2d at 904–05 (2d Cir.1985) (Emphasis in original, citations omitted). *See also, Clarkson Co. LTD. v. Shaheen,* 660 F.2d 506, 512 (2d Cir.1981) (holding under New York law, a director's duty to creditors arises upon insolvency and not only when liquidation is "imminent and foreseeable").

A director is a fiduciary who possesses power by virtue of trust and:

"Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transactions but also to show its inherent fairness from the viewpoint of the corporation and those interested therein ... The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside. While normally that fiduciary obligation is enforceable directly by the corporation, or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee. For that standard of fiduciary obligation is designed for the protection of the entire community of interest in the corporation—creditors as well as stockholders."

*Pepper v. Litton,* 308 U.S. 295, 306–07, 60 S.Ct. 238, 245, 84 L.Ed. 281, 289–90 (1939) (citations omitted). *See also, Mitchell Excavators Inc. by Mitchell v. Mitchell,* 734 F.2d 129 (2d Cir.1984) (holding that, upon filing of the bankruptcy petition, stockholder lost right to pursue derivative action which passes to the estate); *Delgado Oil*

---

**22.** A number of other courts have held that parties, other than the trustees or debtor in possession, have standing to recover under Code provisions stipulating that only the trustee may act. *Equitable Gas Co. v. Equibank N.A. (In re McKeesport Steel Castings Co.),* 799 F.2d 91, 94 (3d Cir.1986); *Becker v. Security National Bank (In re Four Seasons Sporting Goods, Inc.),* 46 B.R. 528, 531 (Bankr.N.D.Cal.1985); *In re Philadelphia Light Supply Co.,* 39 B.R. 51, 52–53 (Bankr.E.D.Pa.1984); *Unsecured Creditors' Com-*

*mittee v. Farmers Savings Bank (In re Toledo Equipment Co., Inc.),* 35 B.R. 315, 317–20 (Bankr.N.D.Ohio 1983); *Committee of Unsecured Creditors v. Monsour Medical Center (Matter of Monsour Medical Center),* 5 B.R. 715, 718 (Bankr.W.D.Pa.1980). *Contra, Wayne Film Systems Corp. v. Film Recovery Systems Corp.,* 64 B.R. 45, 50 (N.D.Ill.1986) (creditor had no standing in bankruptcy court to assert a claim against third party on its own behalf where recovery would not be added to the estate).

**488**

Co., Inc. v. Torres, 785 F.2d 857 (10th Cir.1986) (dismissed District Court's ruling for lack of subject matter jurisdiction over a creditor's Colorado common law action in federal district court against director of insolvent corporation in·bankruptcy since it was the trustee's cause of action which could only be maintained in Bankruptcy Court); American National Bank of Austin v. Mortgage America Corp. (In re MortgageAmerica Corp.), 714 F.2d 1266, 1276 n. 9 (5th Cir.1983) (holding 11 U.S.C. § 362, automatic stay, applied to prevent creditors from pursuing a state court fraudulent transfer action since that cause of action "belongs" to the bankruptcy estate). Compare, Dana Molded Products, Inc. v. Brodner, 58 B.R. 576, 581 (D.C.N.D. Ill.1986) (granting Defendants' Rule 12(b)(6) motion and holding that a single judgment creditor lacks standing to assert RICO action against debtor's directors where the injury was derivative in nature). But see, In re Morgan-Staley Lumber Co., Inc., 70 B.R. 186 (Bankr.D.OR.1986) (Court dismissed adversary proceeding on grounds that chapter 7 trustee lacked standing to prosecute a shareholder's or creditor's derivative action for direct harm to corporation); 4 Collier on Bankruptcy § 541.10[8] (15th ed. 1986) (trustee cannot enforce, under 11 U.S.C. § 541(a), state created obligations which run personally to corporate creditors, rather than to the corporation).

Upon proper proof, equity will not only enforce this loyalty and trust, but also will apply the doctrine of unjust enrichment when fiduciaries "[H]ave yielded to the temptation of self-interest ..." Manufacturers Trust Co., Trustee v. Becker, 338 U.S. 304, 312, 70 S.Ct. 127, 132, 94 L.Ed. 107, 114 (1949). See, Waldschmidt v. Gilly (In the Matter of IMI, Inc.), 24 B.R. 442, 443 (Bankr.E.D.Wis.1982); Restatement of Restitution, §§ 123, 150, 168, 178, 204 (1936).

"A corporation, particularly a troubled one, is not a piece of fruit to be sucked dry of its juices by insiders, while ... creditors must try to shake their thirst at the dry well of bankruptcy. The fiduciary duty of corporate directors is not to be casually shrugged away with accompanying disregard for consequences."

Rivercity v. American Can Co., 600 F.Supp.2d 908, 922 (E.D.La.1984) affirmed 753 F.2d 1300 (5th Cir.1985).

We now examine Vermont law as it pertains to the fiduciary duty and fraudulent transfers claims made by the Committee.[23]

In Assoc., Haystack Property Owners v. Sprague, 145 Vt. 443, 494 A.2d 122 (1985), the Vermont Supreme Court reversed and remanded a trial court's order granting defendant's Vermont Rules of Civil Procedure Rule 12(b)(6) motion to dismiss class action plaintiffs' amended complaint for

---

**23.** The Second Circuit in In re STN Enterprises, supra, 779 F.2d at 905 (2d Cir.1985) remanded, inter alia, for a determination as to whether Vermont law is consistent with the "majority rule" which permits "qualified right" recovery by creditors of an insolvent corporation for mismanagement as if the corporation itself were plaintiff:

"The district court also did not consider-and we decline to resolve in the first instance-Vermont law pertaining to the claim against Janice Noyes as recipient of property fraudulently conveyed ... Absent such consideration by the district court we cannot evaluate that court's implicit ruling that the creditors' committee could not bring suit on the legal claim ..."

As already noted, the Code implies that creditors, under appropriate circumstances may maintain this action. 11 U.S.C. §§ 1103(c)(5) and 1109(b). In re STN Enterprises, supra, 779 F.2d at 904 (2d Cir.1985).

Section 1103(c)(5) and 1109(b) provides:

11 U.S.C. § 1103(c)(5) **Power and duties of committees**

"(c) A committee appointed under section 1102 of this title [11 U.S.C. § 1102] may— ... (5) perform such other services as are in the interest of those represented."

11 U.S.C. § 1109(b) **Right to be heard**

(b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and may be heard on any issue in a case under this chapter [11 U.S.C. §§ 1101 et seq.].

id. (parathenticals supplied for clarity).

The only issues that remains is whether Vermont law on fiduciary duty and fraudulent conveyances recognizes the "qualified right" requirements ("colorable claim") and debtor's unjustifiable failure to prosecute the instant action, before we will find the Committee has standing. See, In re STN Enterprises, supra, 779 F.2d at 905 (2d Cir.1985).

failure to state a claim upon which relief may be granted. Plaintiffs alleged that defendants, as directors of a corporation, owed members of the plaintiffs' class a fiduciary duty; that defendants breached that duty; and that plaintiffs were entitled to damages caused by the director's breach. As the Vermont Supreme Court noted, and we agree, a detailed summary of the factual allegations is necessary in order to understand the opinion.

In *Haystack, id.,* plaintiffs alleged that defendant formed a corporation in the mid–1960's and served as its director as well as the director for its successor.

Facing financial difficulties in the late 1960's, defendant obtained a loan from a credit corporation and pledged as collateral corporate assets and personal marketable securities. Defendant also became a mortgagee of the corporation.

When defendant was unable to meet the debt service, he formed a plan whereby he would purchase land and resell it to the corporation for the latter to market a development of a major second-home community in a ski area. As unimproved lots were sold, defendant applied the proceeds to the credit loan obligations. Defendant promised to provide certain improvements to the lots. The lot deeds contained restrictions requiring that before any buildings could be erected on the lots the corporation had to provide improvements for water and sewer services.

Shortly before the corporation collapsed, but just after the credit loan obligation was paid off, defendant was alleged to have paid exorbitant salaries to his staff, resigned as director of the corporation, and failed to make the necessary water and sewer improvements to the plaintiffs' unimproved lots so the latter, in compliance with the restrictive covenants, could construct buildings thereon. Additionally, after defendant's resignation, defendant, as mortgagee, foreclosed on the unimproved lots, obtained title, and later resold the lots at a profit.

After ruling that a novel legal theory should be explored by facts developed by evidence at trial, the Vermont Supreme Court acknowledged the "qualified right":

"It is true, as the lower court pointed out, that while corporate directors do owe fiduciary duties, the duties are not owed to the world at large. Also it may be generally true that those duties are owed to the corporation and to its stockholders but *not* creditors of the corporations. Nevertheless, some courts have held that corporate directors do owe a fiduciary duty to creditors ... particularly when the corporation becomes insolvent ..."

*Assoc., Haystack Property Owners v. Sprague, supra,* 145 Vt. at 448, 494 A.2d 122 (1985) (emphasis in original).

In *Lash v. Lash Furniture Co. of Barre, Inc.,* 130 Vt. 517, 522, 296 A.2d 207, 211 (1972), the Vermont Supreme Court held:

"[D]ealings between a majority stockholder and director and the corporation he controls are not arms-length transactions. *They are subject to close scrutiny at the instance of persons having an interested relationship to the operation, such as a stockholder.* The relationship of a director-stockholder to his corporation binds him to use utmost good faith and loyalty for the furtherance and advancement of the interest of that corporation. He is not permitted to make profit for himself in the transaction of the business of the corporation, against its interest."

*id.,* (citations omitted, emphasis supplied).

In *Haystack, supra,* the Court seized on the just emphasized language in *Lash, supra,* to preserve plaintiffs' "novel" theory of recovery and held:

"This language suggests that parties other than stockholders, *may,* under certain circumstances, also subject corporate director's dealings to close scrutiny. Again, however remote the possibility or novel the claim may be, we cannot say as a matter of law at this point that there is no possibility that plaintiffs could present sufficient evidence to establish a fiduciary duty and a breach thereof; a dismissal based on V.R.C.P. 12(b)(6) was at least premature in this case."

*Assoc., Haystack Property Owners v. Sprague*, 145 Vt. 443, 448, 494 A.2d 122 (1985) (emphasis in original).

One who alleges that a conveyance is fraudulent must establish affirmatively all the facts necessary to make out fraud. *Bray Enterprises, Inc. v. First Vermont Bank and Trust Co. (In re Bray Enterprises, Inc.)*, 38 B.R. 75, 79 (Bankr.Vt.1984) *citing Darling, Adm'r v. Ricker*, 68 Vt. 471, 473, 35 A. 376, 377 (1896).

In Vermont, while a fraudulent conveyance is statutory, however, its nature is subject to case law. 9 V.S.A. § 2281; *Becker v. Becker*, 138 Vt. 372, 375, 416 A.2d 156 (1980).[24]

In Vermont a conveyance by a debtor of all his property, without reserving adequate assets for his debts, to secure future support of himself and family is fraudulent in law and void as to creditors for whom no provision were made:

> "Now if the law would tolerate a proceeding like this, any person, having the means, may make ample provision for himself and family during life, at the expense of his creditors. But that would not be permitted."

*Crane v. Stickles*, 15 Vt. 252, 257 (1843). *See also, Wilson v. Spear*, 68 Vt. 145, 150, 34 A. 429, 431 (1895).

Vermont distinguishes between proof necessary where property passes for adequate consideration, and where the transfer is "voluntary" or without adequate consideration; and, in the case of "voluntary" conveyances, between those which rest upon the legal inference of fraud and those where an actual fraudulent intent is shown:

"The fraud of a voluntary grantor may be an actual fraudulent purpose, or the fraud which the law imputes to him from the condition of his estate and the necessary consequences of his act. When the grantor is found to have conveyed for the express purpose of defrauding his creditors, the condition of his estate is immaterial ... It is only in cases where no actual fraud appears that the conveyance can be sustained on the ground that the grantor retained sufficient property to satisfy his debts."

*Wilson v. Spear*, 68 Vt. 145, 148, 34 A. 429, 430 (1895). *See also, Becker v. Becker*, 138 Vt. 372, 376–77, 416 A.2d 156, 160 (1980); *Farmer's National Bank v. Thomson*, 74 Vt. 442, 447, 52 A. 961, 963 (1902) (when the conveyance is without adequate consideration, the creditor may avoid the transfer without proof of fraudulent intentions and rely on the fraud alone).

Thus, in Vermont, if a debtor makes a voluntary conveyance without adequate consideration, either during insolvency or as the result of the conveyance creates insolvency by failing to retain sufficient assets for creditors to collect on their debts, then Vermont will impute a rebuttable presumption of fraud against the debtor. *Becker v. Becker*, 138 Vt. 372, 376–77, 416 A.2d 156, 160 (1980).

■ It is our opinion that Vermont would follow the "majority rule" to allow creditors a "qualified right" to sue, on behalf of the debtor corporation under circumstances presented in this adversary proceeding, for breach of fiduciary duty, fraudulent conveyances, and director negligence against directors or officers. *See*, 3 *Fletcher Cyclopedia Corporations* § 849

---

**24.** 9 V.S.A. § 2281 provides:

"§ 2281. *Fraudulent deeds and transfers*
Fraudulent and deceitful conveyances of houses, lands, tenements or hereditaments, or of goods and chattels, and all bonds, bills, notes, contracts and agreements, all actions, judgments and executions, made or had to avoid a right, debt or duty of another person, shall, as against the party only whose right, debt or duty is attempted to be avoided, his heirs, executors, administrators and assigns, be null and void."
In *Becker v. Becker*, 138 V. 372, 375, 416 A.2d 156 (1980), the Vermont Supreme Court stat-

ed four (4) elements for fraudulent transfers: "(1) that there existed a right, debt or duty owed to her by the defendant, which debt, in this case, arose before or near the time of the defendant's conveyance; (2) that the defendant conveyed property which was subject to execution in satisfaction of the defendant's debt; (3) that the conveyance here was without adequate consideration, and (4) if the conveyance was without adequate consideration, as here alleged, that the defendant acted fraudulently to the hindrance of the plaintiff's rights against him."

(M. Wolf perm. ed. revised 1986); 3A *id.* §§ 1180–84.

As we stated earlier, before we granted the Committee leave to initiate this adversary proceeding, we were satisfied that the Committee had met the test of presenting a "colorable claim" for relief and had produced enough preliminary evidence to establish the DIP's unjustifiable failure and conceded refusal to bring the instant action against its own directors and officers.

We apply "The Law of the Case" doctrine to the decision of the Second Circuit in *In re STN Enterprises, supra,* 779 F.2d at 904 (2d Cir.1985) on the issue as to whether "11 U.S.C. §§ 1103(c)(5) and 1109(b) implies a qualified right for a creditors' committees to initiate suit with the approval of the bankruptcy court." We note one prong of the "Law of the Case" doctrine; "When an appellate court has decided an issue, the trial court, at a later stage of the litigation, is under a duty to follow the appellate court's ruling on that issue." *United States v. Cirami,* 563 F.2d 26, 32 (2d Cir.1977).[25] The doctrine of the "Law of the Case" applies to issues decided by an appellate court to which this Court is under a duty to follow. The "Law of the Case" also applies to issues that have been decided "either expressly or by necessary implication." *Munro v. Post,* 102 F.2d 686, 688 (2d Cir.1939).

Since the Second Circuit in *In re STN Enterprises, supra,* 779 F.2d at 904–905 (2d Cir.1985), indicated that if we found that the Committee had presented a "colorable claim" under Vermont corporate fiduciary and fraudulent conveyance law; and were also satisfied that such an action is likely to benefit the reorganization estate, then, implicitly, and in light of DIP's and Defendants conceded and unjustifiable refusal to so prosecute, the Committee has standing to bring this adversary proceeding.

Having resolved the issue of standing, we now turn to the remaining issue wheth-er the Committee has stated a claim(s) upon which relief may be had to survive Defendants' Rules of Bankruptcy Practice and Procedure Rule 7012(b) motion.

## C. SUFFICIENCY OF THE PLEADINGS

The purpose of a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). This Court will deny the motion unless it appears to a certainty that a plaintiff is entitled to no relief under any state of facts which could be proved consistent in support of the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957); *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984). In other words, Defendants must show beyond doubt that the Committee can prove no set of facts in support of their claim(s) which would entitle DIP to relief. *Bishop v. Stoneman,* 508 F.2d 1224 (2d Cir.1974). A Court will not be influenced by the mere possibility that ultimate recovery is remote or tenuous. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). When testing for legal sufficiency, facts for the Court's consideration are limited to those which may be gleaned from the four corners of the complaint, or to statements or documents attached as exhibits to or clearly incorporated by reference in the pleadings. *Goldman v. Belden,* 754 F.2d 1059 (2d Cir.1985). Finally, this Court, for dismissal purposes, will accept as admitted the well-pleaded material allegations of the complaint. *Bicknell v. Vergennes Union High School Bd. of Directors,* 475 F.Supp. 615, 617 (D.Vt.1979) *affirmed on other grounds* 638 F.2d 438 (2d Cir.1980).

---

**25.** *Compare,* 1B *Moore's Federal Practice,* paragraph 0.404(1), at 117, 2d. 1984 (under the doctrine of "The Law of the Case," a decision on an issue of law made at one stage of the case becomes binding precedent to be followed at successive stages of the *same litigation* ) (emphasis ours). We believe "The Law of the Case" doctrine applies in this proceeding even though Noyes and Wilkinson were not actual parties to the original appeal to the Second Circuit.

"If the court considers matters outside of the complaint, it must treat the motion as one for summary judgment and proceed under Fed.R.Civ.P. 56, giving the party opposing the motion notice, an opportunity to submit pertinent material and, if need be, conduct discovery."

*Ryder Energy Distribution v. Merrill Lynch Commod.,* 748 F.2d 774, 779 (2d Cir.1984).

As we discussed, *supra,* 11 U.S.C. §§ 1103(c)(5) and 1109(b) implies a qualified right for a creditors' committee to initiate adversary proceedings on behalf of the debtor in possession with the approval of the bankruptcy court. *Unsecured Creditors Committee of Debtor STN Enterprises, Inc. v. Noyes (In re STN Enterprises),* 779 F.2d 901, 904 (2d Cir.1985).

The Committee initiated this adversary proceeding against Defendant Noyes to recover *inter alia,* preferentially or fraudulently transferred pre-petition assets during and/or giving rise to DIP's insolvency. The Committee advances several legal theories, including: breach of fiduciary duties, *see, Association of Haystack Property Owners, Inc. v. Sprague,* 145 Vt. 443, 494 A.2d 122 (1985); fraudulent transfers or transfers for grossly inadequate consideration, *see, Becker v. Becker,* 138 Vt. 372, 376–77, 416 A.2d 156, 160 (1980); unjust enrichment, *see, e.g., Restatement of Restitution* §§ 123, 150, 168, 178, 204 (1936).

■ The Committee's claims against Defendant Wilkinson, DIP's president and director, for breach of fiduciary duty arises out of an alleged abuse of his position of trust to the injury of the estate and its creditors, which allegedly resulted from his failure to recover misappropriated corporate assets or recover preferential payments, and for drawing salary while prosecuting a personal claim against the debtor. We see no discernable reason why a court appointed president or director, (11 U.S.C. §§ 327(a) and 328(c), note 18, *supra* ), of a debtor in possession may not be just as personally and/or professionally liable as a trustee for negligent, as well as intentional, breaches of fiduciary duties. *See, Mosser v. Darrow,* 341 U.S. 267, 71 S.Ct. 680, 95

L.Ed. 927 (1951) (reorganization trustee surcharged for profits made by employees whom he knowingly permitted to trade in securities of debtor's subsidiary corporations); *In re Gorski,* 766 F.2d 723, 727 (2d Cir.1985) (affirmed bankruptcy court's ruling that a trustee's fiduciary liability may attach as the result of negligent, as well as knowing or intentional breaches); *Morrissey v. Curran,* 650 F.2d 1267, 1282–83 (2d Cir.1981); *Hall v. Perry (In re Cochise College Park, Inc.),* 703 F.2d 1339, 1357 (9th Cir.1983); *contra, Ford Motor Credit Company v. Weaver,* 680 F.2d 451, 461–62 (6th Cir.1982) (requires willful and deliberate violation of fiduciary duty before trustee may be personally liable); *Robbins v. Schuyler (In re United Equipment Sales Co.),* 47 B.R. 818, 822 (Bankr.W.D.Mich. 1985) (surcharged president of debtor in possession, finding him personally liable under *Robbins, supra,* test for willful and deliberate breach of fiduciary duty when he should have known about, *inter alia,* unpaid withholding taxes).

Our examination of Vermont law, *supra,* reveals no Rules of Bankruptcy Practice and Procedure Rule 7012(b) impediments to the Committee's claims. Indeed, in *Haystack, supra,* the Vermont Supreme Court reversed a trial court's granting a Vermont Rules of Civil Procedure Rule 12(b)(6) motion to a defendant being sued for breach of fiduciary duty allegedly owed to creditors of an insolvent corporation and cautioned: "The legal theory of a case should be explored in light of facts as developed by the evidence, and, generally, not dismissed before trial because of the mere novelty of the allegations." *Assoc., Haystack Property Owners v. Sprague, supra,* 145 Vt. at 447, 494 A.2d 122 (1985).

While the Committee's complaint may not be an exemplar, we find the allegations contain therein are sufficient for the Defendants to answer, engage in discovery, and prepare for trial.

"The Courts of this Circuit have recognized that the function of pleadings under the Federal Rules of Civil Procedure is to give fair notice of the claim asserted so as to enable the adverse party to

answer, prepare for trial, allow the application of the doctrine of res judicata, and to show the type of case brought by the plaintiff."

*In re STN Enterprises, Inc,* Case No. 84–98, Ad.Pro. No. 86–0044, unpublished Order, F.G. Conrad, B.J., dated May 29, 1986, *Order Granting Unsecured Creditor's Committee Leave to Institute Adversary Proceedings Against Janice Noyes & Others,* page 2, *citing, Geisler v. Petrocelli,* 616 F.2d 636 (2d Cir.1980).

## CONCLUSION

For the foregoing reasons, we now conclude:

### Subject matter jurisdiction

### and

### power to enter final order

This Court has subject matter jurisdiction, 28 U.S.C. § 1334(b), and authority to enter a final judgment and order as this adversary proceeding is a "core" matter within the meaning of 28 U.S.C. § 157:

### As to Defendant Wilkinson.

The Committee's second cause of action, surcharge under 11 U.S.C. §§ 327(a) and 328(b), against Court appointed Defendant Wilkinson, DIP's president and director, is a "core" proceeding under 28 U.S.C. § 157(b)(2)(A) as it concerns the administration of the estate. Alternatively, the Committee's second cause of action against Defendant Wilkinson also provides for this Court's authority to enter a final order as a non-core-related proceeding under 28 U.S.C. § 157(c)(2), because, by filing a personal adversary proceeding against the debtor while maintaining a position as a Court appointed professional person, Defendant Wilkinson not only provided the basis of the Committee's claim, but also implicitly consented to this Court's entry of a final order on the issue whether a surcharge applies here.

We also hold that the Committee's first cause of action against Defendant Wilkinson, a non-core-related matter, may now be decided as if the entire proceeding were a core matter. The Committee's second cause of action, a core matter, predominates the non-core-related first cause of action. When a proceeding is in part core and in part non-core-related, we may determine the entire proceeding is core when the core aspect predominates and the non-core-related aspect, by comparison, is insignificant.

### As to Defendant Noyes.

We find that Defendant Noyes's declaratory action in this Court against the DIP, concerning the pension plan proceeds, arises out of the same transactions and provides the same *res* for the Committee's causes of action on behalf of the DIP for a return of the pension plan proceeds to the estate. Insofar as the pension is concerned, we conclude the Committee's causes of action are core matters under 28 U.S.C. § 157(b)(2)(C). Alternatively, since Defendant Noyes seeks a final order from us in her declaratory action, she has implicitly consented to this Court's authority to enter a final order over the pension plan proceeds as a non-core-related matter under 28 U.S.C. § 157(c)(2).

As to the balance of the Committee's causes of action against Defendant Noyes, we find those matters to be core, within the meaning of 28 U.S.C. §§ 157(b)(2)(F) and (H), proceedings to determine, avoid, or recover preferences and proceedings to determine, avoid, or recover fraudulent conveyances.

### Standing.

The Committee has standing to prosecute this adversary proceeding under the implied, but qualified right of creditors' committees to initiate adversary proceedings in the name of the debtor in possession under 11 U.S.C. §§ 1103(c)(5) and 1109(b). The Committee has established, by appropriate proof, prima facie colorable claims under applicable Vermont law for relief. These claims supported our threshold inquiry that the DIP unjustifiably failed to bring suit on claims that are likely to benefit the reorganization estate.

### As to the Sufficiency of the pleadings.

After viewing the material allegations of the complaint, along with such reasonable

inferences as may be gathered therefrom in the Committee's favor, we hold the Committee's averments sufficient to withstand Defendants' Rules of Bankruptcy Practice and Procedure Rule 7012(b) motions to dismiss, and for failure to state claims upon which relief may be had.

The Committee's complaint, under scrutiny of the office of a motion to dismiss, has withstood the legal feasibility and colorable claims test under both Vermont State as well as bankruptcy law which compels this Court to conclude that it can not appear to a certainty that the Committee is entitled to no relief under any state of facts which could be proved in support of their claims. Accordingly,

It is hereby ORDERED that the motions to dismiss for lack of standing, lack of subject matter jurisdiction, and failure to state claims upon which relief may be had by Defendants Noyes and Wilkinson are hereby DENIED.